PORTMAN v. STATE, EX. REL. WOOD, PROSECUTING ATTORNEY.

4-6823                                            162 S. W. 2d 67

Opinion delivered May 25, 1942.

*House, Moses & Holmes, J. Paul Ward, Shouse & Shouse* and *H. J. Denton,* for appellant.

*Jack Holt,* Attorney General and *Jno. P. Streepey,* Assistant Attorney General, for appellee.

350

MEHAFFY, J.    This case was begun in the Baxter circuit court by the prosecuting attorney of the Sixteenth Judicial District, filing information charging Ben Portman, Mrs. Ben Portman, and Steve Highers with being engaged in the operation of an establishment in the town of Ellis, Arkansas, known as "The Chef." It charged that in said establishment public dancing was allowed, beer and wine sold, and gambling has been carried on; that in said establishment unlawful drinking of intoxicating liquors has been repeatedly carried on, quarrels have repeatedly arisen in and about the premises, affrays, fights and breaches of the peace have repeatedly taken place, in violation of the law of the State of Arkansas, by reason of which said establishment is a public nuisance.

The prayer of the petition was that the establishment be adjudged a public nuisance, and the court issue a temporary injunction ordering such establishment to be closed until such time as a trial may be held and upon a final hearing of this petition the temporary injunction be made permanent.

A copy was served on the appellants and a temporary order granted.

Appellants filed a demurrer alleging that the petition did not state facts sufficient to constitute a cause of action against said defendants, or either of them, or against the Chef Cafe or facts that would entitle the State of Arkansas, or authorize or entitle the court to grant or make an order adjudging said Chef Cafe to be a public nuisance, and the granting of such injunction and the closing of same as a public nuisance.

The court overruled the demurrer and defendants saved their exceptions.

Appellants then filed the following answer: "Now, come the defendants, Ben Portman, Mrs. Ben Portman, and Steve Highers, and each of them, and without waiving their demurrer, or their rights, and the rights of each of them, thereunder, but still insisting upon the same, and saving their rights thereunder, for their joint and separate answer and answers state:

"They deny, specifically, each and all, the allegations of the petition for temporary and permanent injunction for the closing of the 'Chef Cafe,' as a public nuisance. They, and each of them, deny that they, or either of them, have been guilty of the acts of misconduct alleged in the operation of said cafe or that any unlawful operation of same has been permitted by them, or that said cafe has become, or is, a public nuisance, as alleged by said petition."

The court made a finding of facts and entered judgment declaring that in said establishment beer and wine are sold and public dancing permitted; that gambling has been carried on and has been permitted to be carried on with cards, dice and punchboards; that the selling of beer and wine, together with the unlawful gambling, constitutes said establishment a public nuisance. The court ordered said nuisance to be abated for the period of one year; enjoined and restrained defendants from selling beer and wine or any other intoxicants in or about said establishment for a period of one year. The court enjoined and restrained defendant, Steve Highers, from occupying any part of said building and from having ingress or egress to any part of said building other than the cafe, which is accessible to the general public; that this order shall extend to any agent, attorney, employee, lessee or assignee of any and all of the defendants. The court ordered that defendants, Ben Portman and Mrs. Ben Portman, be allowed to continue the operation of the cafe business, but that no gambling be carried on; that they be allowed a period of two weeks in which to dispose of such stocks of wine and beer as might be on hand, but enjoined and restrained them from selling beer and wine and any other intoxicant in or about said building after the two weeks. The court further ordered that the basement room, which has been occupied by Steve Highers be by the sheriff padlocked and barred from ingress and egress of any and all persons save officers of the court, acting under authority of the court.

Motion for new trial was filed and overruled by the court, to which ruling defendants excepted. Defendants prayed and were granted an appeal to the supreme court, and the case is now here on appeal.

The law under which appellants were prosecuted in this case has been construed several times, and it would serve no useful purpose to review all those decisions. But in the case of *Foley* v. *State*, 200 Ark. 521, 139 S. W. 2d 673, the act under which the prosecution was had and the decisions of this court were reviewed. The constitutionality of the act was discussed, and the act was upheld. In that case the appellants contended that act 118 of 1937 was unconstitutional, first, because jurisdiction is therein conferred on the circuit and chancery courts to enforce the act, whereas chancery courts alone have such power. The court said that this court sustained act 109 of 1915, which conferred jurisdiction upon circuit and chancery courts to abate nuisances, as defined in said act.

The appellants in this case say that the state showed, and appellants, admitted, that certain punchboards and an Indian board were exhibited at the Chef Cafe three months prior to the date of the filing of the petition, but none thereafter. The officers took charge of the punchboards and Indian board and took them away, and of course they were not there afterwards.

It is also contended by appellants that the testimony of Rudolph Mallonee and his wife is unworthy of belief. But the credibility of witnesses was passed on by the court below, and we do not pass on their credibility nor the weight of their testimony. There is, however, sufficient evidence, without the testimony of the Mallonees, to justify the finding of the court.

The evidence shows that Mrs. Portman, one of appellants, owned the building, and that Ben Portman, her husband, owned the cafe. He testified that he had three punchboards for about a month before they were taken up, and that he and his wife punched most of the punches that are gone, as a matter of amusement. He did not say who punched the others, but he testified that the deputy prosecuting attorney had told him that the boards were all right, and that most every place in the county was operating them, and that it would be all right to shake dice for merchandise, punches on punchboards, or meals, and that he could see nothing wrong in it. This evidence

was denied by the deputy prosecuting attorney. Portman further testified that he gave a free punch with each dollar purchase and a shake of the dice, if they wanted it, to see whether they got two punches or none. If they got a punch that called for anything, they were paid in merchandise, no money changed hands.

It would make no difference whether they gambled in money or merchandise, it would certainly be gambling, if they did what appellants say they did. He further testified that he had a permit to sell beer and wine; that he had a nickelodian which furnished the music for dancing; that couples were permitted to dance as long as their conduct was proper.

It is true that appellants testified that there was no gambling, but they also testified that customers would shake dice and gamble for meals; that is, if the customer won he received his meal without paying for it, and if he lost, he paid for two meals.

The evidence, we think, is ample to show that there was gambling and dancing and drinking at the restaurant. Appellants kept an instrument to make music for customers to dance by. Moreover, it was the province of the lower court to pass on the credibility and the weight to be given to their testimony.

The order of the court permitted Mr. and Mrs. Portman to continue the operation of the cafe business, but prohibited gambling in said building. They were allowed two weeks within which to sell and dispose of such stocks of wine and beer as they had on hand, and they were enjoined from selling and allowing to be sold beer and wine or any other intoxicant in and about said building.

The court stated in his finding of facts that he was going to make an order closing the establishment for the period of one year and going to make an *addenda* to this order that the establishment be operated as a restaurant, and that the social dancing may go on as long as it is carried on right and lawfully, and the *addenda* will be to the further effect that while this building can be used for a restaurant, the basement and this gambling room will

be locked and closed for one year. The court further stated: "It is possible that the court will consider a motion to modify the order as to this particular room, if satisfied gambling will not go on, or be permitted, in it."

We have carefully examined all of the testimony, and we are of the opinion that there was ample evidence to authorize the court to find that gambling, dancing and the sale of intoxicating liquors was going on in the restaurant and to justify the order of the court.

The judgment of the court is, therefore, affirmed.