Mr. Charles L. Ormond The Insurance Place 101 South Moose Street Post Office Box 29 Morrilton, AR 72110
Dear Mr. Ormond:
This is in response to your request for certification, pursuant to A.C.A. § 7-9-107 (Repl. 2000), of the popular name and ballot title for a proposed constitutional amendment. You have previously submitted various similar measures, some of which my predecessor rejected due to ambiguities in the text of your proposed amendments. See Ops. Att'y Gen. Nos. 2007-057, 2007-022, 2005-190, 2005-168, 2005-128 and 2005-089. My predecessor revised and certified popular names and ballot titles for two similar measures, as evidenced by Ops. Att'y Gen. Nos. 2005-239 and 2005-219. You have made changes in the text of your proposal since your last submission, and have now submitted the following proposed popular name and ballot title for my certification:
Popular Name
The Arkansas Commission on Lotteries and Gambling Amendment
Ballot Title
AN AMENDMENT TO THE ARKANSAS CONSTITUTION CREATING THE ARKANSAS COMMISSION ON LOTTERIES AND GAMBLING AND INVESTING IT WITH POWER TO LICENSE AND REGULATE CHARITABLE BINGO AND RAFFLES, CONDUCT AND REGULATE GAMBLING GAMES, AND REQUIRING IT TO OPERATE AND REGULATE ONE OR MORE STATEWIDE LOTTERY GAMES; DEPRIVING THE GENERAL ASSEMBLY OF ANY POWER TO REGULATE OR REVIEW THE COMMISSION; RENDERING INAPPLICABLE TO THE COMMISSION ANY STATE LAW REGULATING A STATE AGENCY; PROVIDING FOR THE APPOINTMENT BY THE GOVERNOR OF FOUR (4) INITIAL COMMISSIONERS, ONE FROM EACH CONGRESSIONAL DISTRICT, AND THE APPOINTMENT OF ONE ADDITIONAL INITIAL COMMISSIONER, WHO SHALL BE MR. CHARLES ORMOND OF MORRILTON, ARKANSAS, WHO SHALL SERVE AS DIRECTOR; AUTHORIZING THE GOVERNOR TO ARRANGE STAGGERED TERMS OF TWO (2), FOUR (4), SIX (6) AND EIGHT (8) YEARS FOR THE FOUR (4) INITIAL COMMISSIONERS AND SETTING THE TERM OF MR. CHARLES ORMOND BEGINNING JANUARY 1 OF THE YEAR FOLLOWING THE ADOPTION AND ENACTMENT OF THIS AMENDMENT FOR A TERM OF TEN (10) YEARS; PROVIDING, UPON THE EXPIRATION OF THE INITIAL COMMISSIONERS' TERMS, FOR THE STAGGERED POPULAR, NONPARTISAN, PLURALITY ELECTION OF FOUR FUTURE COMMISSIONERS ONE FROM EACH CONGRESSIONAL DISTRICT FOR ONE EIGHT (8) YEAR TERM EACH, AND THE APPOINTMENT, BY THE FOUR (4) ELECTED COMMISSIONERS, OF A FIFTH COMMISSIONER TO SERVE AS DIRECTOR; AUTHORIZING THE DIRECTOR TO VOTE IN CASE OF A TIE AND LIMITING HIS SERVICE TO NO MORE THAN TEN (10) YEARS; SETTING THE QUALIFICATIONS OF COMMISSIONERS AND PROVIDING FOR THE FILLING OF TEMPORARY VACANCIES BY THE REMAINING COMMISSION MEMBERS; AUTHORIZING THE COMMISSIONERS TO SET THEIR OWN REASONABLE SALARIES AND THE SALARY OF THE DIRECTOR AND OTHER EMPLOYEES; AUTHORIZING THE COMMISSION TO LICENSE AND REGULATE CHARITABLE BINGO BY CERTAIN NONPROFIT ENTITIES WITH NET RECEIPTS USED ONLY FOR CHARITABLE, RELIGIOUS AND PHILANTHROPIC PURPOSES AND REQUIRING IT TO OPERATE AND REGULATE ONE OR MORE STATEWIDE LOTTERY GAMES, AS DEFINED, THROUGH CONTRACTUALLY-AUTHORIZED LOTTERY GAME RETAILERS; AUTHORIZING THE COMMISSION TO CONDUCT AND REGULATE GAMBLING GAMES, AS DEFINED, IN FACILITIES OWNED BY THE COMMISSION AND OPERATED BY THE COMMISSION OR THROUGH CONTRACTS WITH ONE (1) OR MORE PERSONS; AUTHORIZING LODGING, RECREATIONAL AND ENTERTAINMENT FACILITIES IN CONJUNCTION WITH GAMBLING FACILITIES AND AUTHORIZING THE SERVING OF ALCOHOLIC BEVERAGES AT ANY TIME IN GAMBLING FACILITIES; REQUIRING THE COMMISSION TO COMPLY WITH ALCOHOLIC BEVERAGE LAWS NOT IN CONFLICT WITH THE AMENDMENT; RESTRICTING THE CONDUCTING OF GAMBLING GAMES TO COUNTIES WHERE THE VOTERS HAVE APPROVED SUCH GAMES, EXCEPT THAT THE COMMISSION MAY AGREE TO LICENSE ANY THOROUGHBRED OR GREYHOUND RACING TRACK OWNER TO CONDUCT GAMBLING GAMES WITHOUT LOCAL VOTER APPROVAL; AUTHORIZING SIMULCASTING OF RACES HELD AT THE TRACKS AT GAMBLING FACILITIES OF THE COMMISSION OR ITS CONTRACTORS; DENYING THE COMMISSION THE AUTHORITY TO REGULATE PARI-MUTUEL WAGERING AT THE TRACKS; PROVIDING THAT DISAPPROVAL OF GAMBLING GAMES BY COUNTY VOTERS WILL NOT AFFECT PARI-MUTUEL WAGERING BY HORSE RACING OR GREYHOUND TRACKS OR WAGERING AUTHORIZED BY OTHER LAW; REQUIRING THE COMMISSION TO ESTABLISH "GAMBLING DISTRICTS" WHEN ONE (1) OR MORE COUNTIES APPROVE GAMBLING GAMES; PROVIDING FOR THE APPOINTMENT, BY THE COMMISSION, OF "GAMBLING DISTRICT ADVISORY COMMITTEES" FOR EACH GAMBLING DISTRICT; AUTHORIZING THE COMMISSION TO: (1) BORROW MONEY AND ISSUE NEGOTIABLE EVIDENCES OF DEBT, BUT PROVIDING THAT THE STATE, COMMISSIONERS AND ITS EMPLOYEES SHALL NOT BE LIABLE FOR SUCH DEBTS; (2) PLEDGE ITS REVENUES AND MORTGAGE ITS PROPERTY; (3) ACQUIRE PROPERTY BY EMINENT DOMAIN IN THE SAME MANNER AS EXERCISED BY THE GAME AND FISH COMMISSION; AND (4) RECEIVE FUNDS APPROPRIATED BY LAW; REQUIRING INCOME RECEIVED FROM LICENSURE OF CHARITABLE BINGO TO BE USED SOLELY FOR ADMINISTRATION OF THAT PROGRAM; REQUIRING RETENTION OF NET LOTTERY PROCEEDS BY THE COMMISSION TO SUPPORT ITS FUNCTIONS; REQUIRING THE DISTRIBUTION OF NET GAMBLING PROCEEDS IN A GAMBLING DISTRICT AS FOLLOWS: (1) FOURTEEN PERCENT (14%) TO THE COUNTIES, MUNICIPALITIES AND SCHOOL DISTRICTS IN THE GAMBLING DISTRICT AS DETERMINED BY THE COMMISSION AFTER CONSIDERING THE PROPORTION OF REAL PROPERTY TAXES DISTRIBUTED BY EACH COUNTY TO THE TAXING ENTITIES DURING THE PREVIOUS CALENDAR YEAR; (2) SIX PERCENT (6%) FOR REBATES TO REAL PROPERTY OWNERS OF REAL PROPERTY TAXES PAID IN THE DISTRICT AS DETERMINED BY THE COMMISSION; (3) TEN PERCENT (10%) TO A TRUST FUND TO REIMBURSE RESIDENTS OF THE DISTRICT FOR A PORTION OF THEIR HEALTH INSURANCE PREMIUMS AS DETERMINED BY THE COMMISSION; AND (4) SEVENTY PERCENT (70%) RETAINED BY THE COMMISSION FOR OPERATIONS; AUTHORIZING THE GENERAL ASSEMBLY TO INCREASE THE PERCENTAGES DISTRIBUTED TO TAXING UNITS AND FOR TAX REBATES AND TO THEREBY REDUCE THE AMOUNT RETAINED BY THE COMMISSION; AUTHORIZING THE COMMISSION TO REMIT SURPLUS FUNDS TO THE STATE APPORTIONMENT FUND IN THE STATE TREASURY; PROVIDING THAT COMMISSION EXPENDITURES SHALL NOT BE SUBJECT TO APPROPRIATION BY THE GENERAL ASSEMBLY; LEGALIZING SHIPMENTS OF GAMBLING DEVICES INTO ARKANSAS FOR PURPOSES OF FEDERAL LAW; DENYING THE GENERAL ASSEMBLY AND POLITICAL SUBDIVISIONS REGULATORY AUTHORITY OVER THE COMMISSION OR ITS ACTIVITIES EXCEPT AS OTHERWISE STATED; AMENDING ARKANSAS CONSTITUTION ART. 19, SECTION 14 TO OBVIATE THE EXISTING PROHIBITION AGAINST LOTTERIES WHERE SUCH LOTTERIES ARE AUTHORIZED ELSEWHERE IN THE CONSTITUTION; AMENDING ARKANSAS CONSTITUTION AMENDMENT 84 TO PROVIDE THAT THE ARKANSAS COMMISSION ON LOTTERIES AND GAMBLING SHALL PROVIDE BY LAW FOR THE LICENSURE AND REGULATION OF AUTHORIZED BINGO AND RAFFLES ORGANIZATIONS TO CONDUCT THE GAME OF BINGO OR RAFFLES; AND MAKING THE AMENDMENT SEVERABLE AND EFFECTIVE JANUARY 1 OF THE YEAR FOLLOWING ADOPTION AND ENACTMENT OF THIS AMENDMENT
The Attorney General is required, pursuant to A.C.A. § 7-9-107, to certify the popular name and ballot title of all proposed initiative and referendum acts or amendments before the petitions are circulated for signature. The law provides that the Attorney General may substitute and certify a more suitable and correct popular name and ballot title, if he can do so, or if the proposed popular name and ballot title are sufficiently misleading, may reject the entire petition. Neither certification nor rejection of a popular name and ballot title reflects our view of the merits of the proposal because this Office has been given no authority to consider the merits of any measure.
In this regard, A.C.A. § 7-9-107 neither requires nor authorizes this office to make legal determinations concerning the merits of the act or amendment, or concerning the likelihood that it will accomplish its stated objective. Consequently, this review has been limited to a determination, pursuant to the guidelines that have been set forth by the Arkansas Supreme Court, discussed below, of whether the proposed popular name and ballot title accurately and impartially summarize the provisions of your proposed amendment or act.
The purpose of my review and certification is to ensure that the popular name and ballot title honestly, intelligibly, and fairly set forth the purpose of the proposed amendment or act. See Arkansas Women's Political Caucus v. Riviere, 282 Ark. 463, 466, 677 S.W.2d 846 (1984).
The popular name is primarily a useful legislative device. Pafford v. Hall, 217 Ark. 734, 233 S.W.2d 72 (1950). It need not contain detailed information or include exceptions that might be required of a ballot title, but it must not be misleading or give partisan coloring to the merit of the proposal. Chaney v. Bryant, 259 Ark. 294, 532 S.W.2d 741
(1976); Moore v. Hall, 229 Ark. 411, 316 S.W.2d 207 (1958). The popular name is to be considered together with the ballot title in determining the ballot title's sufficiency. Id.
The ballot title must include an impartial summary of the proposed amendment or act that will give the voter a fair understanding of the issues presented. Hoban v. Hall, 229 Ark. 416, 417, 316 S.W.2d 185
(1958); Becker v. Riviere, 270 Ark. 219, 223, 226, 604 S.W.2d 555
(1980). According to the court, if information omitted from the ballot title is an "essential fact which would give the voter serious ground for reflection, it must be disclosed." Bailey v. McCuen, 318 Ark. 277,285, 884 S.W.2d 938 (1994), citing Finn v. McCuen, 303 Ark. 418,798 S.W.2d 34 (1990); Gaines v. McCuen, 296 Ark. 513, 758 S.W.2d 403 (1988); Hoban v. Hall, supra; and Walton v. McDonald, 192 Ark. 1155,97 S.W.2d 81 (1936). At the same time, however, a ballot title must be brief and concise (see A.C.A. § 7-9-107(b)); otherwise voters could run afoul of A.C.A. § 7-5-522's five minute limit in voting booths when other voters are waiting in line. Bailey v. McCuen, supra. The ballot title is not required to be perfect, nor is it reasonable to expect the title to cover or anticipate every possible legal argument the proposed measure might evoke. Plugge v. McCuen, 310 Ark. 654, 841 S.W.2d 139 (1992). The title, however, must be free from any misleading tendency, whether by amplification, omission, or fallacy; it must not be tinged with partisan coloring. Id. A ballot title must convey an intelligible idea of the scope and significance of a proposed change in the law. Christian Civic Action Committee v. McCuen, 318 Ark. 241, 884 S.W.2d 605 (1994). It has been stated that the ballot title must be: 1) intelligible, 2) honest, and 3) impartial. Becker v. McCuen, 303 Ark. 482, 798 S.W.2d 71 (1990), citing Leigh v. Hall, 232 Ark. 558, 339 S.W.2d 104 (1960).
Applying the above precepts, it is my conclusion that your proposed popular name "The Arkansas Commission on Lotteries and Gambling Amendment" is sufficient. It is hereby certified as submitted. In my judgment, however, several changes and additions are needed to your proposed ballot title to give the electors a clear understanding of your measure. In this regard, I have re-worded the introductory section regarding the conduct and regulation of "gambling games"; inserted a qualification to the language regarding the General Assembly's absence of regulatory or review power over the Commission; inserted the word "raffles" in two places; inserted the word "existing" in referring to the thoroughbred and greyhound racing tracks authorized to conduct gambling games without an election; inserted a clause explaining that "electronic games of skill" are included in the definition of "gambling games" subject to exclusive regulation of the Commission; inserted clauses making clear that gambling districts are comprised of approving counties and at least one "facility for gambling games" shall be located in one county in each gambling district; and clarified the language concerning the changes made to Amendment 84 regarding charitable bingo and raffles. The following is hereby certified in order to insure that, when construed together, the popular name and ballot title accurately set forth the purpose of the proposed amendment:
Ballot Title
AN AMENDMENT TO THE ARKANSAS CONSTITUTION CREATING THE ARKANSAS COMMISSION ON LOTTERIES AND GAMBLING AND INVESTING IT WITH POWER TO LICENSE AND REGULATE CHARITABLE BINGO AND RAFFLES, CONDUCT AND REGULATE GAMBLING GAMES AT CASINOS OWNED BY THE COMMISSION AND OPERATED BY THE COMMISSION OR ITS CONTRACTORS, LICENSE THOROUGHBRED AND GREYHOUND RACING TRACKS TO CONDUCT GAMBLING GAMES, AND REQUIRING THE COMMISSION TO OPERATE AND REGULATE ONE OR MORE STATEWIDE LOTTERY GAMES; DEPRIVING THE GENERAL ASSEMBLY OF ANY POWER TO REGULATE OR REVIEW THE COMMISSION EXCEPT AS OTHERWISE STATED IN THE AMENDMENT; RENDERING INAPPLICABLE TO THE COMMISSION ANY STATE LAW REGULATING A STATE AGENCY; PROVIDING FOR THE APPOINTMENT BY THE GOVERNOR OF FOUR (4) INITIAL COMMISSIONERS, ONE FROM EACH CONGRESSIONAL DISTRICT, AND THE APPOINTMENT OF ONE ADDITIONAL INITIAL COMMISSIONER, WHO SHALL BE MR. CHARLES ORMOND OF MORRILTON, ARKANSAS, WHO SHALL SERVE AS DIRECTOR; AUTHORIZING THE GOVERNOR TO ARRANGE STAGGERED TERMS OF TWO (2), FOUR (4), SIX (6) AND EIGHT (8) YEARS FOR THE FOUR (4) INITIAL COMMISSIONERS AND SETTING THE TERM OF MR. CHARLES ORMOND BEGINNING JANUARY 1 OF THE YEAR FOLLOWING ADOPTION AND ENACTMENT OF THIS AMENDMENT FOR A TERM OF TEN (10) YEARS; PROVIDING, UPON THE EXPIRATION OF THE INITIAL COMMISSIONERS' TERMS, FOR THE STAGGERED POPULAR, NONPARTISAN, PLURALITY ELECTION OF FOUR FUTURE COMMISSIONERS ONE FROM EACH CONGRESSIONAL DISTRICT FOR ONE EIGHT (8) YEAR TERM EACH, AND THE APPOINTMENT, BY THE FOUR (4) ELECTED COMMISSIONERS, OF A FIFTH COMMISSIONER TO SERVE AS DIRECTOR; AUTHORIZING THE DIRECTOR TO VOTE IN CASE OF A TIE AND LIMITING HIS SERVICE TO NO MORE THAN TEN (10) YEARS; SETTING THE QUALIFICATIONS OF COMMISSIONERS AND PROVIDING FOR THE FILLING OF TEMPORARY VACANCIES BY THE REMAINING COMMISSION MEMBERS; AUTHORIZING THE COMMISSIONERS TO SET THEIR OWN REASONABLE SALARIES AND THE SALARY OF THE DIRECTOR AND OTHER EMPLOYEES; AUTHORIZING THE COMMISSION TO LICENSE AND REGULATE CHARITABLE BINGO AND RAFFLES BY CERTAIN NONPROFIT ENTITIES WITH NET RECEIPTS USED ONLY FOR CHARITABLE, RELIGIOUS AND PHILANTHROPIC PURPOSES AND REQUIRING IT TO OPERATE AND REGULATE ONE OR MORE STATEWIDE LOTTERY GAMES, AS DEFINED, THROUGH CONTRACTUALLY-AUTHORIZED LOTTERY GAME RETAILERS; AUTHORIZING THE COMMISSION TO CONDUCT AND REGULATE GAMBLING GAMES, AS DEFINED, IN FACILITIES (CASINOS) OWNED BY THE COMMISSION AND OPERATED BY THE COMMISSION OR THROUGH CONTRACTS WITH ONE (1) OR MORE PERSONS; AUTHORIZING LODGING, RECREATIONAL AND ENTERTAINMENT FACILITIES IN CONJUNCTION WITH GAMBLING FACILITIES AND AUTHORIZING THE SERVING OF ALCOHOLIC BEVERAGES AT ANY TIME IN GAMBLING FACILITIES; REQUIRING THE COMMISSION TO COMPLY WITH ALCOHOLIC BEVERAGE LAWS NOT IN CONFLICT WITH THE AMENDMENT; RESTRICTING THE CONDUCTING OF GAMBLING GAMES TO COUNTIES WHERE THE VOTERS HAVE APPROVED SUCH GAMES, EXCEPT THAT THE COMMISSION MAY AGREE TO LICENSE ANY EXISTING THOROUGHBRED OR GREYHOUND RACING TRACK OWNER TO CONDUCT GAMBLING GAMES WITHOUT LOCAL VOTER APPROVAL; AUTHORIZING SIMULCASTING OF RACES HELD AT THE TRACKS AT GAMBLING FACILITIES OF THE COMMISSION OR ITS CONTRACTORS; DENYING THE COMMISSION THE AUTHORITY TO REGULATE PARI-MUTUEL WAGERING AT THE TRACKS BUT INCLUDING "ELECTRONIC GAMES OF SKILL" CONDUCTED BY THE TRACKS IN THE DEFINITION OF "GAMBLING GAMES" SUBJECT TO EXCLUSIVE REGULATION BY THE COMMISSION INSTEAD OF THE ARKANSAS RACING COMMISSION AS UNDER CURRENT LAW; PROVIDING THAT DISAPPROVAL OF GAMBLING GAMES BY COUNTY VOTERS WILL NOT AFFECT PARI-MUTUEL WAGERING BY HORSE RACING OR GREYHOUND TRACKS OR WAGERING AUTHORIZED BY OTHER LAW; REQUIRING THE COMMISSION TO ESTABLISH ONE OR MORE "GAMBLING DISTRICTS" COMPRISED OF APPROVING COUNTIES WHEN ONE (1) OR MORE COUNTIES APPROVE GAMBLING GAMES; REQUIRING A FACILITY FOR GAMBLING GAMES TO BE LOCATED IN AT LEAST ONE COUNTY IN EACH GAMBLING DISTRICT; PROVIDING FOR THE APPOINTMENT, BY THE COMMISSION, OF "GAMBLING DISTRICT ADVISORY COMMITTEES" FOR EACH GAMBLING DISTRICT; AUTHORIZING THE COMMISSION TO: (1) BORROW MONEY AND ISSUE NEGOTIABLE EVIDENCES OF DEBT, BUT PROVIDING THAT THE STATE, COMMISSIONERS AND ITS EMPLOYEES SHALL NOT BE LIABLE FOR SUCH DEBTS; (2) PLEDGE ITS REVENUES AND MORTGAGE ITS PROPERTY; (3) ACQUIRE PROPERTY BY EMINENT DOMAIN IN THE SAME MANNER AS EXERCISED BY THE GAME AND FISH COMMISSION; AND (4) RECEIVE FUNDS APPROPRIATED BY LAW; REQUIRING INCOME RECEIVED FROM LICENSURE OF CHARITABLE BINGO AND RAFFLES TO BE USED SOLELY FOR ADMINISTRATION OF THAT PROGRAM; REQUIRING RETENTION OF NET LOTTERY PROCEEDS BY THE COMMISSION TO SUPPORT ITS FUNCTIONS; REQUIRING THE DISTRIBUTION OF NET GAMBLING PROCEEDS IN A GAMBLING DISTRICT AS FOLLOWS: (1) FOURTEEN PERCENT (14%) TO THE COUNTIES, MUNICIPALITIES AND SCHOOL DISTRICTS IN THE GAMBLING DISTRICT AS DETERMINED BY THE COMMISSION AFTER CONSIDERING THE PROPORTION OF REAL PROPERTY TAXES DISTRIBUTED BY EACH COUNTY TO THE TAXING ENTITIES DURING THE PREVIOUS CALENDAR YEAR; (2) SIX PERCENT (6%) FOR REBATES TO REAL PROPERTY OWNERS OF REAL PROPERTY TAXES PAID IN THE DISTRICT AS DETERMINED BY THE COMMISSION; (3) TEN PERCENT (10%) TO A TRUST FUND TO REIMBURSE RESIDENTS OF THE DISTRICT FOR A PORTION OF THEIR HEALTH INSURANCE PREMIUMS AS DETERMINED BY THE COMMISSION; AND (4) SEVENTY PERCENT (70%) RETAINED BY THE COMMISSION FOR OPERATIONS; AUTHORIZING THE GENERAL ASSEMBLY TO INCREASE THE PERCENTAGES DISTRIBUTED TO TAXING UNITS AND FOR TAX REBATES AND TO THEREBY REDUCE THE AMOUNT RETAINED BY THE COMMISSION; AUTHORIZING THE COMMISSION TO REMIT SURPLUS FUNDS TO THE STATE APPORTIONMENT FUND IN THE STATE TREASURY; PROVIDING THAT COMMISSION EXPENDITURES SHALL NOT BE SUBJECT TO APPROPRIATION BY THE GENERAL ASSEMBLY; LEGALIZING SHIPMENTS OF GAMBLING DEVICES INTO ARKANSAS FOR PURPOSES OF FEDERAL LAW; DENYING THE GENERAL ASSEMBLY AND POLITICAL SUBDIVISIONS REGULATORY AUTHORITY OVER THE COMMISSION OR ITS ACTIVITIES EXCEPT AS OTHERWISE STATED; AMENDING THE ARKANSAS CONSTITUTION'S ART. 19, SECTION 14 LOTTERY PROHIBITION TO EXCEPT LOTTERIES AUTHORIZED BY THE CONSTITUTION; AMENDING ARKANSAS CONSTITUTION AMENDMENT 84 TO SUBSTITUTE THE COMMISSION FOR THE GENERAL ASSEMBLY AS THE ENTITY WITH THE DUTY TO PROVIDE FOR LICENSURE AND REGULATION OF CHARITABLE BINGO AND RAFFLES AND REPEALING THE REFERENCE TO THE GENERAL ASSEMBLY'S AUTHORITY TO TAX SUCH ACTIVITIES; AND MAKING THE AMENDMENT SEVERABLE AND EFFECTIVE JANUARY 1 OF THE YEAR FOLLOWING ADOPTION AND ENACTMENT
As a final matter, I find it pertinent to note the particular hazards attendant to the ballot title of a lengthy and complex proposal such as yours. The ballot title for such a measure must avoid both the danger of being too lengthy and the danger of having serious omissions. More specifically, the title cannot be so lengthy as to cause voters to violate the voting booth time limitations, yet it must not omit any of the proposed measure's important factors. For this reason, I must point out that with any proposed amendment of considerable length and complexity such as yours, the sponsor runs the risk of a challenge and of a finding by the court that the ballot title is unacceptable, either because it is too "complex, detailed, and lengthy," or because it has "serious omissions." See, e.g., Page v. McCuen, 318 Ark. 342,884 S.W.2d 951 (1994); Walker v. Priest, 342 Ark. 410, 29 S.W.3d 657 (2000) and Op. Att'y Gen. 2005-212. In this regard, the considerable length of the present ballot title concerns me. But I believe the length cannot be avoided due to the detailed nature of the proposed amendment.
Pursuant to A.C.A. § 7-9-108, instructions to canvassers and signers must precede every petition, informing them of the privileges granted by the Constitution and of the penalties imposed for violations of this act. Enclosed herewith, over the signature of the Attorney General, are instructions that should be incorporated in your petition prior to circulation.
Sincerely,
 DUSTIN McDANIEL Attorney General