Ms. Diane Bray, Chair The LOCAL Amendment P.O. Box 1718 Little Rock, Arkansas 72202
Dear Ms. Bray:
This letter is being issued in response to your request for certification, pursuant to A.C.A. § 7-9-107, of the following popular name and ballot title for a proposed constitutional amendment:
 (Popular Name) AN AMENDMENT TO CREATE THE ARKANSAS LOTTERY AND CASINO COMMISSION; TO ESTABLISH THE ARKANSAS LOTTERY, CHARITABLE BINGO AND RAFFLES, TO AUTHORIZE CASINO GAMBLING BY LICENSEES APPROVED BY THE COMMISSION AT CERTAIN DESIGNATED SITES, AT OTHER SITES AND IN OTHER COUNTIES IF APPROVED BY THE VOTERS AT A COUNTY LOCAL OPTION ELECTION, AND AT EXISTING PARI-MUTUEL SITES UPON APPROVAL BY THE COMMISSION AFTER NOVEMBER 1, 1998; AND TO REPEAL THE STATE SALES TAX ON CERTAIN FOOD ITEMS.
 (Ballot Title) AN AMENDMENT TO THE ARKANSAS CONSTITUTION CREATING THE ARKANSAS LOTTERY AND CASINO COMMISSION CONSISTING OF FIVE (5) MEMBERS AND A DIRECTOR APPOINTED BY THE GOVERNOR WHO MAY BE REMOVED FOR CAUSE; EMPOWERING THE COMMISSION TO MAKE RULES TO LICENSE AND REGULATE CASINOS; ESTABLISHING A STATE LOTTERY TO BE OPERATED BY THE COMMISSION; PROHIBITING THE STATE OF ARKANSAS FROM IMPOSING A SALES TAX ON CERTAIN FOOD ITEMS AND REPEALING ANY SUCH EXISTING TAX ALL AFTER NOVEMBER 1, 1997; PROVIDING THAT THE REVENUES DERIVED FROM LOTTERY TICKET SALES SHALL BE ALLOCATED AS FOLLOWS: NO LESS THAN 50% FOR LOTTERY PRIZES; NO LESS THAN 35% TO BE USED AS SUBSTITUTIONARY FUNDS IN LIEU OF THE EXEMPTION FROM STATE SALES TAX ON CERTAIN FOOD ITEMS PROVIDED FOR HEREIN; NO MORE THAN 10% FOR THE OPERATION OF THE LOTTERY; AND 5% FOR COMMISSIONS TO LOTTERY TICKET RETAILERS; AUTHORIZING SUCH CHARITABLE BINGO GAMES AND CHARITABLE RAFFLES AS MAY HEREAFTER BE AUTHORIZED BY THE GENERAL ASSEMBLY; AUTHORIZING CASINO GAMBLING BY LICENSEES APPROVED BY THE COMMISSION AT: ONE (1) SPECIFIC SITE, AS SET FORTH BY LEGAL DESCRIPTION, IN EACH OF BOONE, GARLAND AND CHICOT COUNTIES; THREE (3) ADDITIONAL LICENSES, ONE (1) IN PULASKI AT A SITE SET FORTH BY LEGAL DESCRIPTION, ONE (1) IN GARLAND AND ONE (1) IN MILLER COUNTIES IF APPROVED BY COUNTY LOCAL OPTION ELECTIONS; THREE (3) AT-LARGE LICENSES IN ANY COUNTY IF APPROVED BY THE COMMISSION AND BY COUNTY LOCAL OPTION; AND AT THE TWO EXISTING PARI-MUTUEL TRACKS IF APPROVED BY THE COMMISSION AFTER NOVEMBER 1, 1998; PROVIDING THAT NO MORE THAN ELEVEN (11) LICENSED CASINOS MAY BE SIMULTANEOUSLY OPERATED; PROVIDING FOR LOCAL OPTION CASINO ELECTIONS UPON PETITION BY TWENTY PERCENT (20%) OF THE QUALIFIED VOTERS IN A COUNTY; EXEMPTING LICENSED SITES FROM LAND USE RESTRICTIONS; EXEMPTING LICENSEES FROM CERTAIN ALCOHOLIC BEVERAGE RESTRICTIONS; LEVYING AN EIGHT (8%) STATE TAX ON CASINO GROSS GAMBLING REVENUES; LEVYING A TAX OF UP TO 2% BY THE MUNICIPALITIES OR COUNTIES HAVING CASINOS FOR CAPITAL IMPROVEMENTS AGREED UPON BETWEEN THE MUNICIPALITY OR COUNTY AND THE CASINO; PROHIBITING ADDITIONAL TAXES ON GROSS GAMBLING REVENUES; REQUIRING CASINOS TO PAY STATE INCOME TAXES ON NON-GAMBLING REVENUE AT THE SAME RATE APPLICABLE TO OTHER ARKANSAS BUSINESSES; AUTHORIZING IMPORTATION OF GAMBLING DEVICES BY LICENSEES; PROVIDING THAT REVENUES FROM CASINO TAXES, FEES AND FINES, LESS COMMISSION EXPENSES SHALL BE ALLOCATED: 40% FOR PUBLIC EDUCATION; 35% FOR PUBLIC SAFETY ON A PER CAPITA BASIS TO MUNICIPALITIES AND COUNTIES STATEWIDE; 10% FOR PUBLIC SAFETY PURPOSES TO MUNICIPALITIES AND COUNTIES IN WHICH CASINO GAMBLING IS CONDUCTED BASED UPON THE AMOUNT OF GAMBLING REVENUES COLLECTED IN EACH RESPECTIVE COUNTY; 10% FOR NATURAL RESOURCES PRESERVATION AND PROMOTION; AND 5% FOR THE PREVENTION OF ALCOHOL AND GAMBLING-RELATED ADDITIVE BEHAVIOR; PROHIBITING LOTTERY TICKET SALES ON CREDIT, THROUGH ANY PURCHASER-OPERATED SYSTEM; PROHIBITING PERSONS UNDER TWENTY-ONE (21) YEARS FROM GAMBLING AT A CASINO OR PURCHASING LOTTERY TICKETS; PROHIBITING ALL WAGERING ACTIVITIES OTHER THAN THOSE AUTHORIZED BY ARKANSAS LAW OR THIS AMENDMENT; REQUIRING THE GENERAL ASSEMBLY TO ENACT NECESSARY LEGISLATION TO IMPLEMENT THE PROVISIONS OF THIS AMENDMENT; REPEALING ALL EXISTING CONSTITUTIONAL PROVISIONS AND LAWS IN CONFLICT WITH THIS AMENDMENT TO THE EXTENT OF ANY SUCH CONFLICT EXCEPT AS OTHERWISE STATED IN THIS AMENDMENT; MAKING THE AMENDMENT EFFECTIVE UPON PASSAGE; RENDERING ITS PROVISIONS SEVERABLE AND SELF-EXECUTING; AND FOR OTHER PURPOSES.
The Attorney General is required, pursuant to Section 7-9-107, to approve and certify the popular name and ballot title of all proposed initiative and referendum acts or amendments before the petitions are circulated for signature. The law provides that the Attorney General may substitute and certify a more suitable and correct popular name and ballot title, or if the proposed popular name and ballot title are sufficiently misleading, may reject the entire petition.
Section 7-9-107 neither requires nor authorizes this office to make legal determinations concerning the merits of the act or amendment, or concerning the likelihood that it will accomplish its stated objective. Consequently, this review has been limited to a determination, pursuant to the guidelines that have been set forth by the Arkansas Supreme Court, discussed below, of whether the proposed popular name and ballot title accurately and impartially summarize the provisions of your proposed amendment.
The purpose of my review and certification is to insure that the popular name and ballot title honestly, intelligently, and fairly set forth the purpose of the proposed amendment. See Arkansas Women's Political Caucusv. Riviere, 282 Ark. 463, 466, 677 S.W.2d 846 (1984). The popular name is primarily a useful legislative device. Pafford v. Hall, 217 Ark. 734,233 S.W.2d 72 (1950). It need not contain detailed information or include exceptions which might be required of a ballot title, but it must not be misleading or give partisan coloring to the merit of the proposal. Chaneyv. Bryant, 259 Ark. 294, 532 S.W.2d 741 (1976); Moore v. Hall,229 Ark. 411, 316 S.W.2d 207 (1958). The popular name is to be considered together with the ballot title in determining the ballot title's sufficiency. Id.
A ballot title must include an impartial summary of the proposed amendment which will give the voter a fair understanding of the issues presented. Hoban v. Hall, 229 Ark. 416, 417, 316 S.W.2d 185 (1958); Beckerv. Riviere, 270 Ark. 219, 223, 226, 604 S.W.2d 555 (1980). According to the court, if information omitted from the ballot title is an "essential fact which would give the voter serious ground for reflection, it must be disclosed." Bailey v. McCuen, 318 Ark. 277, 285, 884 S.W.2d 938 (1994),citing Finn v. McCuen, 303 Ark. 418, 798 S.W.2d 34 (1990), Gaines v.McCuen, 296 Ark. 513, 758 S.W.2d 403 (1988), Hoban v. Hall, supra, andWalton v. McDonald, 192 Ark. 1155, 97 S.W.2d 81 (1936). At the same time, however, a ballot title must be brief and concise (see A.C.A. §7-9-107(b)); otherwise voters could run afoul of A.C.A. § 7-5-522's five minute limit in voting booths when other voters are waiting in line.Bailey v. McCuen, supra. The ballot title is not required to be perfect, nor is it reasonable to expect the title to cover or anticipate every possible legal argument the proposed measure might evoke. Plugge v.McCuen, 310 Ark. 654, 841 S.W.2d 139 (1992) The title, however, must be free from any misleading tendency, whether by amplification, omission, or fallacy; it must not be tinged with partisan coloring. Id. A ballot title must convey an intelligible idea of the scope and significance of a proposed change in the law. Christian Civic Action Committee v. McCuen,318 Ark. 241, 884 S.W.2d 605 (1994). It has been stated that the ballot title must be: 1) intelligible, 2) honest, and 3) impartial. Becker v.McCuen, 303 Ark. 482, 798 S.W.2d 71 (1990), citing Leigh v. Hall,232 Ark. 558, 339 S.W.2d 104 (1960).
I find it pertinent to note the particular hazards attendant to the ballot title of a lengthy and complex proposal such as yours. The ballot title for such a measure must avoid both the danger of being too lengthy and the danger of having serious omissions. More specifically, the title cannot be so lengthy as to cause voters to violate the voting booth time limitations, yet it must not omit any of the proposed measure's important factors.
The Arkansas Supreme Court has stated that while the length of a ballot title is not controlling in the determination of the title's sufficiency, length is a consideration. See Christian Civic ActionCommittee v. McCuen, 318 Ark. 241, 246, 884 S.W.2d 605 (1994). On the other hand, the court has rejected ballot titles that had omitted factors of the proposed measure for the purpose of reducing the title's length, when the court found the omissions to be "serious omissions." See, e.g.,Page v. McCuen, 318 Ark. 342, 884 S.W.2d 605 (1994). There is no clearly discernible test for determining what constitutes a "serious omission" that would render a ballot title insufficient.
Page v. McCuen, supra, is an example of the dilemma faced by sponsors of lengthy and complex measures. In that case, the Arkansas Supreme Court pointed out that the measure at issue there was so all-encompassing that to include every important factor of the measure in the ballot title would render the title "so complex, detailed and lengthy that the Arkansas voter could not intelligently make a choice on the title within the five minutes allowed in the voting booth." Page v. McCuen,318 Ark. 342, 347, 884 S.W.2d 951 (1994). The court went on to note:
 Although Amendment 7 to the Arkansas Constitution does not specify a limit on the length of a proposal, the proposed measure must be of a size capable of having a ballot title which will not only convey the scope and import of the measure, but also impart a description of the proposal so voters can cast their votes intelligently and with a fair understanding on the issue.
Page v. McCuen, 318 Ark. 342, 347, 884 S.W.2d 951 (1994).
The Page v. McCuen court concluded that the proposed measure in that case was "so expansive that it precludes the writing of an acceptable ballot title." Id.
For this reason, I must point out that with any proposed amendment of considerable length and complexity such as yours, the sponsor runs the risk of a challenge and of a finding by the court that the ballot title is unacceptable, either because it is too "complex, detailed, and lengthy," or because it has "serious omissions." Page, supra.
Having analyzed your proposals under the above precepts, I hereby substitute the following popular name and ballot title for the ones that you submitted, in order to apprise the voters more fully of the substance of the proposal:
 (Popular Name) AN AMENDMENT TO AUTHORIZE A STATE LOTTERY, CHARITABLE BINGO AND RAFFLES, AND CASINO GAMBLING AT CERTAIN APPROVED SITES AND UNDER CERTAIN APPROVED CONDITIONS; CREATING THE ARKANSAS LOTTERY AND CASINO GAMBLING COMMISSION TO REGULATE SUCH ACTIVITIES; AND EXEMPTING CERTAIN FOOD ITEMS FROM SALES TAX.
 (Ballot Title) AN AMENDMENT TO THE ARKANSAS CONSTITUTION AUTHORIZING A STATE LOTTERY, BINGO GAMES AND RAFFLES CONDUCTED FOR CHARITABLE PURPOSES, AND CASINO GAMBLING AT CERTAIN DESIGNATED SITES AND UNDER CERTAIN CONDITIONS; CREATING THE ARKANSAS LOTTERY AND CASINO COMMISSION CONSISTING OF FIVE (5) MEMBERS AND A DIRECTOR APPOINTED BY THE GOVERNOR WHO MAY BE REMOVED FOR CAUSE; EMPOWERING THE COMMISSION TO MAKE RULES TO LICENSE AND REGULATE CASINOS AND TO ADMINISTER THE STATE LOTTERY; EMPOWERING THE COMMISSION TO INVESTIGATE APPLICANTS, TO ISSUE SUBPOENAS, TO SET AND ASSESS FINES FOR VIOLATIONS OF ITS RULES, TO COMPEL COMPLIANCE WITH AND RESTRAIN VIOLATIONS OF ITS RULES; PROVIDING FOR APPEAL FROM COMMISSION DECISIONS; PROHIBITING THE STATE OF ARKANSAS FROM IMPOSING A SALES TAX ON CERTAIN FOOD ITEMS AND REPEALING ANY SUCH EXISTING TAX ALL AFTER NOVEMBER 1, 1997; PROVIDING THAT THE REVENUES DERIVED FROM LOTTERY TICKET SALES SHALL BE ALLOCATED AS FOLLOWS: NO LESS THAN 50% FOR LOTTERY PRIZES; NO LESS THAN 35% TO BE USED AS SUBSTITUTIONARY FUNDS IN LIEU OF THE REVENUES EXEMPTED FROM STATE SALES TAX ON CERTAIN FOOD ITEMS AS PROVIDED HEREIN; NO MORE THAN 10% FOR THE OPERATION OF THE LOTTERY; AND 5% FOR COMMISSIONS TO LOTTERY TICKET RETAILERS; AUTHORIZING CASINO GAMBLING AS AN APPROPRIATE LAND USE BY LICENSEES APPROVED BY THE COMMISSION AT: ONE (1) PREVIOUSLY-CHOSEN SPECIFIC SITE, AS SET FORTH BY LEGAL DESCRIPTION IN THIS AMENDMENT, IN EACH OF BOONE, GARLAND AND CHICOT COUNTIES; THREE (3) ADDITIONAL LICENSES, ONE (1) IN PULASKI AT A PREVIOUSLY-CHOSEN SITE SET FORTH BY LEGAL DESCRIPTION IN THIS AMENDMENT, ONE (1) IN GARLAND AND ONE (1) IN MILLER COUNTIES IF APPROVED BY COUNTY LOCAL OPTION ELECTIONS; THREE (3) AT-LARGE LICENSES IN ANY COUNTY IF APPROVED BY THE COMMISSION AND BY COUNTY LOCAL OPTION; AND AT THE TWO EXISTING PARI-MUTUEL TRACKS AFTER NOVEMBER 1, 1998; PROVIDING THAT NO MORE THAN ELEVEN (11) LICENSED CASINOS MAY BE SIMULTANEOUSLY OPERATED; PROVIDING FOR LOCAL OPTION CASINO ELECTIONS UPON PETITION BY TWENTY PERCENT (20%) OF THE QUALIFIED VOTERS IN A COUNTY; AUTHORIZING LICENSED CASINOS TO OPERATE 24 HOURS PER DAY AND PERMITTING SUCH CASINOS TO SELL OR SERVE ALCOHOLIC BEVERAGES DURING SUCH HOURS; LEVYING AN EIGHT (8%) STATE TAX ON CASINO GROSS GAMBLING REVENUES; AUTHORIZING THE LEVY OF A TAX OF UP TO 2% BY THE MUNICIPALITIES OR COUNTIES HAVING CASINOS FOR CAPITAL IMPROVEMENTS AGREED UPON BETWEEN THE MUNICIPALITY OR COUNTY AND THE CASINO; PROHIBITING ADDITIONAL TAXES ON GROSS GAMBLING REVENUES; REQUIRING CASINOS TO PAY STATE INCOME TAXES ON NON-GAMBLING REVENUE AT THE SAME RATE APPLICABLE TO OTHER ARKANSAS BUSINESSES; AUTHORIZING IMPORTATION OF GAMBLING DEVICES BY LICENSEES; PROVIDING THAT REVENUES FROM CASINO TAXES, FEES AND FINES, LESS COMMISSION EXPENSES SHALL BE ALLOCATED: 40% FOR PUBLIC EDUCATION; 35% FOR PUBLIC SAFETY ON A PER CAPITA BASIS TO MUNICIPALITIES AND COUNTIES STATEWIDE; 10% FOR PUBLIC SAFETY PURPOSES TO MUNICIPALITIES AND COUNTIES IN WHICH CASINO GAMBLING IS CONDUCTED BASED UPON THE AMOUNT OF GAMBLING REVENUES COLLECTED IN EACH RESPECTIVE COUNTY; 10% FOR NATURAL RESOURCES PRESERVATION AND PROMOTION; AND 5% FOR THE PREVENTION OF ALCOHOL AND GAMBLING-RELATED ADDICTIVE BEHAVIOR; PROHIBITING LOTTERY TICKET SALES ON CREDIT, THROUGH ANY PURCHASER-OPERATED SYSTEM; PROHIBITING PERSONS UNDER TWENTY-ONE (21) YEARS FROM GAMBLING AT A CASINO OR PURCHASING LOTTERY TICKETS; REQUIRING THE GENERAL ASSEMBLY TO ENACT NECESSARY LEGISLATION TO IMPLEMENT THE PROVISIONS OF THIS AMENDMENT; REPEALING ALL EXISTING CONSTITUTIONAL PROVISIONS AND LAWS IN CONFLICT WITH THIS AMENDMENT TO THE EXTENT OF ANY SUCH CONFLICT EXCEPT AS OTHERWISE STATED IN THIS AMENDMENT; MAKING THE AMENDMENT EFFECTIVE UPON PASSAGE; RENDERING ITS PROVISIONS SEVERABLE AND SELF-EXECUTING; AND FOR OTHER PURPOSES.
Pursuant to A.C.A. § 7-9-108, instructions to canvassers and signers are enclosed herewith.
Sincerely,
WINSTON BRYANT Attorney General
WB:SA/cyh