Committee for a Healthier Arkansas c/o Phil Matthews 419 Natural Resources Drive Little Rock, AR 72205
Dear Mr. Matthews:
This is in response to your request, submitted April 28th, 2000, for certification pursuant to A.C.A. § 7-9-107 (Repl. 1993) of a popular name and ballot title for a proposed initiated act. As the law firm representing the Committee notes in its cover letter enclosed with the present submission, the Committee made a previous similar submission on April 24th, 2000. After discussions with my staff about the sufficiency of the same, the Committee has chosen to revise the proposed popular name, lengthen and revise the proposed ballot title, and make minor changes in the text of the proposed initiated act. You now submit the following for my certification:
 Popular Name THE TOBACCO SETTLEMENT PROCEEDS ACT Ballot Title AN ACT ESTABLISHING FUNDS AND ACCOUNTS FOR THE DEPOSIT, INVESTMENT AND MANAGEMENT OF PROCEEDS TO BE RECEIVED BY THE STATE FROM THE MASTER SETTLEMENT AGREEMENT BETWEEN VARIOUS STATES AND TOBACCO MANUFACTURERS (THE "TOBACCO SETTLEMENT"); AND PROVIDING THAT THE FUNDS AND ACCOUNTS WILL BE MANAGED BY THE STATE BOARD OF FINANCE; PROVIDING THAT ALL TOBACCO SETTLEMENT PROCEEDS SHALL BE DEPOSITED IN THE TOBACCO SETTLEMENT CASH HOLDING FUND (THE "HOLDING FUND"), WHICH WILL BE A CASH FUND HELD SEPARATE AND APART FROM THE STATE TREASURY, AND THAT PROCEEDS WILL BE TRANSFERRED FROM THE HOLDING FUND TO THE OTHER FUNDS AS DIRECTED IN THIS ACT; PROVIDING THAT THE FIRST $100,000,000 OF TOBACCO SETTLEMENT PROCEEDS RECEIVED BY THE STATE WILL FUND THE ARKANSAS HEALTHY CENTURY TRUST FUND (THE "TRUST FUND") WITHIN THE STATE TREASURY AS A REVOCABLE TRUST SUBJECT TO AMENDMENT, TO BE INVESTED FOR USE IN THE FUTURE; PROVIDING THAT EARNINGS ON THE TRUST FUND SHALL BE USED ONLY TO PAY COSTS OF THE STATE BOARD OF FINANCE IN MANAGING THE TOBACCO SETTLEMENT AND ADDITIONAL HEALTH-RELATED USES AS DIRECTED BY THE GENERAL ASSEMBLY; PROVIDING THAT IN 2001, ANY TOBACCO SETTLEMENT PROCEEDS RECEIVED BY THE STATE AND NOT NEEDED TO FUND THE TRUST FUND TO ITS INITIAL ENDOWMENT LEVEL WILL BE TRANSFERRED TO THE TOBACCO SETTLEMENT PROGRAM FUND (THE "PROGRAM FUND") WITHIN THE STATE TREASURY AND USED FOR THE PROGRAMS DESCRIBED BELOW; PROVIDING THAT BEGINNING IN 2002 AND IN EACH YEAR THEREAFTER, TOBACCO SETTLEMENT PROCEEDS SHALL BE DIVIDED AS FOLLOWS: (1) THE FIRST $5,000,000 RECEIVED IN EACH YEAR WILL BE TRANSFERRED TO THE TOBACCO SETTLEMENT DEBT SERVICE FUND (THE "DEBT SERVICE FUND"), A CASH FUND HELD SEPARATE AND APART FROM THE STATE TREASURY AND IRREVOCABLY PLEDGED TO PAY DEBT SERVICE ON TOBACCO SETTLEMENT REVENUE BONDS (THE "REVENUE BONDS"); PROVIDING THAT ANNUAL TRANSFERS TO THE DEBT SERVICE FUND SHALL BE PERPETUAL, BUT THAT AMOUNTS IN THE DEBT SERVICE FUND NOT NEEDED TO PAY DEBT SERVICE SHALL BE TRANSFERRED TO THE TRUST FUND; AND PROVIDING THAT REVENUE BONDS WILL BE ISSUED BY THE ARKANSAS DEVELOPMENT FINANCE AUTHORITY FOR THE FOLLOWING CAPITAL IMPROVEMENT PROJECTS: (a) UNIVERSITY OF ARKANSAS FOR MEDICAL SCIENCES ("UAMS") BIOSCIENCES RESEARCH BUILDING IN A PRINCIPAL AMOUNT NOT TO EXCEED $25,000,000; (b) ARKANSAS STATE UNIVERSITY ("ASU") BIOSCIENCES RESEARCH BUILDING IN A PRINCIPAL AMOUNT NOT TO EXCEED $20,000,000; (c) SCHOOL OF PUBLIC HEALTH IN A PRINCIPAL AMOUNT NOT TO EXCEED $15,000,000; AND (d) ANY OTHER CAPITAL IMPROVEMENT PROJECTS RELATED TO HEALTH SUBSEQUENTLY DESIGNATED BY THE GENERAL ASSEMBLY; (2) THE REMAINING PROCEEDS RECEIVED EACH YEAR SHALL BE TRANSFERRED TO THE PROGRAM FUND AND USED TO PAY FOR THE FOLLOWING PROGRAMS IN THE FOLLOWING PERCENTAGES, PROVIDED, HOWEVER, THAT SUCH EXPENDITURES ARE SUBJECT TO APPROPRIATION BY THE GENERAL ASSEMBLY: (a) 31.6% TO PREVENTION AND CESSATION PROGRAMS ADMINISTERED BY THE ARKANSAS DEPARTMENT OF HEALTH ("ADH"), WHICH SHALL ALLOCATE MONEY AND MAKE GRANTS TO PREVENT TOBACCO USE AND ASSIST IN CESSATION OF TOBACCO USE; (b) 15.8% TO THE TARGETED STATE NEEDS PROGRAMS, TO BE ESTABLISHED BY UAMS, WITH FUNDS DISTRIBUTED AMONG (i) A NEW ARKANSAS SCHOOL FOR PUBLIC HEALTH ON THE CAMPUS OF UAMS (33%), (ii) A NEW AREA HEALTH EDUCATION CENTER TO SERVE EASTERN ARKANSAS (22%), (iii) PROGRAMS PROVIDING HEALTH SERVICES TO THE ELDERLY THROUGH THE DONALD W. REYNOLDS CENTER ON AGING (22%), AND (iv) A MINORITY HEALTH INITIATIVE ADDRESSING HEALTH PROBLEMS DISPROPORTIONATELY AFFECTING MINORITIES (23%); (c) 22.8% TO THE ARKANSAS BIOSCIENCES INSTITUTE, A COOPERATIVE VENTURE AMONG THE UNIVERSITY OF ARKANSAS, DIVISION OF AGRICULTURE, UAMS, THE UNIVERSITY OF ARKANSAS, FAYETTEVILLE, ARKANSAS CHILDREN'S HOSPITAL, AND ASU, TO CONDUCT RESEARCH; AND (d) 29.8% FOR THE MEDICAID EXPANSION PROGRAM, TO BE ADMINISTERED BY THE ARKANSAS DEPARTMENT OF HUMAN SERVICES ("DHS") TO INCREASE MEDICAID BENEFITS AND SERVICES; PROVIDING THAT THE STATE BOARD OF FINANCE SHALL INVEST ALL AMOUNTS IN THE HOLDING FUND, THE PROGRAM FUND AND RELATED ACCOUNTS, AND THE ARKANSAS TOBACCO SETTLEMENT COMMISSION FUND (THE "ATSC FUND") IN THE SAME MANNER AS OTHER STATE TREASURY FUNDS, AND SHALL INVEST THE TRUST FUND AND THE DEBT SERVICE FUND PURSUANT TO A PRUDENT INVESTOR STANDARD; CREATING THE ARKANSAS TOBACCO SETTLEMENT COMMISSION (THE "ATSC") TO MONITOR AND EVALUATE THE PROGRAMS FUNDED FROM TOBACCO SETTLEMENT PROCEEDS; PROVIDING THAT THE ATSC SHALL BE COMPRISED OF THE DIRECTORS OR THEIR DESIGNEES OF THE ARKANSAS SCIENCE AND TECHNOLOGY AUTHORITY ("ASTA"), THE DEPARTMENT OF EDUCATION, THE DEPARTMENT OF HIGHER EDUCATION, DHS, AND ADH, TWO HEALTHCARE PROFESSIONALS (ONE SELECTED BY THE SENATE PRESIDENT PRO TEMPORE AND ONE BY THE SPEAKER OF THE HOUSE), AND TWO CITIZENS (ONE SELECTED BY THE GOVERNOR AND ONE BY THE ATTORNEY GENERAL); AND PROVIDING THAT EARNINGS ON THE PROGRAM FUND AND THE PROGRAM ACCOUNTS SHALL BE TRANSFERRED TO THE ATSC FUND TO BE USED TO PAY EXPENSES OF THE ATSC AND FUND ATSC GRANTS; CREATING THE ARKANSAS BIOSCIENCES INSTITUTE AND ESTABLISHING THAT ITS BOARD HAS THE AUTHORITY TO MAKE RESEARCH GRANTS AND WILL BE COMPRISED OF THE FOLLOWING: THE PRESIDENT OF THE UNIVERSITY OF ARKANSAS ("UA"), THE PRESIDENT OF ARKANSAS STATE UNIVERSITY, THE CHANCELLOR OF UAMS, THE CHANCELLOR OF UA, FAYETTEVILLE, THE VICE PRESIDENT FOR AGRICULTURE OF UA, THE DIRECTOR OF THE ASTA, THE DIRECTOR OF THE NATIONAL CENTER FOR TOXICOLOGICAL RESEARCH, THE PRESIDENT OF ARKANSAS CHILDREN'S HOSPITAL, AND TWO PERSONS POSSESSING SCIENTIFIC, ACADEMIC OR BUSINESS QUALIFICATIONS APPOINTED BY THE GOVERNOR; CREATING THE ARKANSAS SCHOOL OF PUBLIC HEALTH; CREATING AN ADVISORY COMMITTEE TO THE ARKANSAS BOARD OF HEALTH TO PROVIDE RECOMMENDATIONS ON PREVENTION AND CESSATION PROGRAMS; ESTABLISHING SPECIFIC GUIDELINES FOR EVALUATING EACH PROGRAM FUNDED UNDER THIS ACT; AMENDING ARK. CODE ANN. § 19-4-803 TO EXEMPT THE HOLDING FUND FROM NORMAL BUDGETING AND APPROPRIATION REQUIREMENTS; DIRECTING THE DIRECTOR OF DHS TO COMMENCE MEDICAID EXPANSION FROM AVAILABLE FUNDS PRIOR TO RECEIPT OF TOBACCO SETTLEMENT PROCEEDS; DIRECTING THE DIRECTOR OF DHS TO SPEND $600,000 DURING THE BIENNIAL PERIOD ENDING JUNE 30, 2001 TO OFFSET FEDERAL CUTS IN THE MEALS ON WHEELS PROGRAM; DECLARING THE PROVISIONS OF THIS ACT TO BE SEVERABLE; AND REPEALING ALL LAWS AND PARTS OF LAWS IN CONFLICT WITH THIS ACT.
The Attorney General is required, pursuant to A.C.A. § 7-9-107, to certify the popular name and ballot title of all proposed initiative and referendum acts or amendments before the petitions are circulated for signature. The law provides that the Attorney General may substitute and certify a more suitable and correct popular name and ballot title, if he can do so, or if the proposed popular name and ballot title are sufficiently misleading, may reject the entire petition.
A.C.A. § 7-9-107 neither requires nor authorizes this office to make legal determinations concerning the merits of the act or amendment, or concerning the likelihood that it will accomplish its stated objective. Consequently, this review has been limited to a determination, pursuant to the guidelines that have been set forth by the Arkansas Supreme Court, discussed below, of whether the proposed popular name and ballot title accurately and impartially summarize the provisions of your proposed act.
The purpose of my review and certification is to ensure that the popular name and ballot title honestly, intelligibly, and fairly set forth the purpose of the proposed act. See Arkansas Women's Political Caucus v.Riviere, 282 Ark. 463, 466, 677 S.W.2d 846 (1984).
The popular name is primarily a useful legislative device. Pafford v.Hall, 217 Ark. 734, 233 S.W.2d 72 (1950). It need not contain detailed information or include exceptions that might be required of a ballot title, but it must not be misleading or give partisan coloring to the merit of the proposal. Chaney v. Bryant, 259 Ark. 294, 532 S.W.2d 741
(1976); Moore v. Hall, 229 Ark. 411, 316 S.W.2d 207 (1958). The popular name is to be considered together with the ballot title in determining the ballot title's sufficiency. Id.
The ballot title must include an impartial summary of the proposed act that will give the voter a fair understanding of the issues presented.Hoban v. Hall, 229 Ark. 416, 417, 316 S.W.2d 185 (1958); Becker v.Riviere, 270 Ark. 219, 223, 226, 604 S.W.2d 555 (1980). According to the court, if information omitted from the ballot title is an "essential fact which would give the voter serious ground for reflection, it must be disclosed." Bailey v. McCuen, 318 Ark. 277, 285, 884 S.W.2d 938 (1994), citing Finn v. McCuen, 303 Ark. 418, 798 S.W.2d 34 (1990); Gaines v.McCuen, 296 Ark. 513, 758 S.W.2d 403 (1988); Hoban v. Hall, supra; andWalton v. McDonald, 192 Ark. 1155, 97 S.W.2d 81 (1936). At the same time, however, a ballot title must be brief and concise (see A.C.A. §7-9-107(b)); otherwise voters could run afoul of A.C.A. § 7-5-522's five minute limit in voting booths when other voters are waiting in line.Bailey v. McCuen, supra. The ballot title is not required to be perfect, nor is it reasonable to expect the title to cover or anticipate every possible legal argument the proposed measure might evoke. Plugge v.McCuen, 310 Ark. 654, 841 S.W.2d 139 (1992). The title, however, must be free from any misleading tendency, whether by amplification, omission, or fallacy; it must not be tinged with partisan coloring. Id. A ballot title must convey an intelligible idea of the scope and significance of a proposed change in the law. Christian Civic Action Committee v. McCuen,318 Ark. 241, 884 S.W.2d 605 (1994). It has been stated that the ballot title must be: 1) intelligible, 2) honest, and 3) impartial. Becker v.McCuen, 303 Ark. 482, 798 S.W.2d 71 (1990), citing Leigh v. Hall,232 Ark. 558, 339 S.W.2d 104 (1960).
Having analyzed your proposed act, as well as your revised popular name and ballot title under the above precepts, I find that they should be certified as submitted.
I find it pertinent to note at this juncture, however, the particular hazards attendant to the preparation of a ballot title for a lengthy and complex proposal such as this one. The ballot title for such a measure must avoid both the danger of being too lengthy and the danger of having serious omissions. More specifically, the title cannot be so lengthy as to cause voters to violate the voting booth time limitations, yet it must not omit any of the proposed measure's important factors.
Page v. McCuen, 318 Ark. 342, 884 S.W.2d 951 (1994) is an example of the dilemma faced by sponsors of lengthy and complex measures. In Page, the Arkansas Supreme Court pointed out that the measure at issue there was so all-encompassing that to include every important factor of the measure in the ballot title would render the title "so complex, detailed and lengthy that the Arkansas voter could not intelligently make a choice on the title within the five minutes allowed in the voting booth." Page v.McCuen, 318 Ark. 342, 347, 884 S.W.2d 951 (1994). The court went on to note:
 Although Amendment 7 to the Arkansas Constitution does not specify a limit on the length of a proposal, the proposed measure must be of a size capable of having a ballot title which will not only convey the scope and import of the measure, but also impart a description of the proposal so voters can cast their votes intelligently and with a fair understanding on the issue.
Id.
The Page v. McCuen court concluded that the proposed measure in that case was "so expansive that it precludes the writing of an acceptable ballot title." Id. See also Crochet v. Priest, supra (stating that "there is in effect a practical constraint on the length of both a proposed amendment and its ballot title that stems from the requirements that a ballot title convey the scope and import of the proposal while also imparting a fair description of the proposal to allow voters to vote intelligently in the limited time allotted them in a voting booth.")
The ballot title for your measure is, by a computer count, 994 words long. I had occasion to discuss the relevant Arkansas Supreme Court precedents relating to the length of ballot titles in Op. Att'y. Gen.99-197, in which I rejected a proposed ballot title, in part, based upon its length (1166 words). As stated in Op. 99-197, the court has held that while the length of a ballot title is not a controlling factor, it can be a major one. See Christian Civic Action Committee v. McCuen,318 Ark. 241, 884 S.W.2d 605 (1994), citing Dust v. Riviere, 277 Ark. 1,638 S.W.2d 663 (1982) and Newton v. Hall, 196 Ark. 930, 120 S.W.2d 364
(1938). The longest title approved by the Arkansas Supreme Court contained 900 words. Bailey v. Hall, Secretary of State, 198 Ark. 815,131 S.W.2d 635 (1939). There were no serious omissions or fallacious statements in that ballot title, which summarized a referendum on a workers' compensation law passed by the General Assembly. Similarly, inNewton v. Hall, Secretary of State, supra a 735-word title was upheld, but the court noted length as a potential problem. More recent decisions, however, have struck ballot titles of substantial length when the titles contained serious omissions or misleading tendencies. SeeScott v. Priest, 326 Ark. 328, 932 S.W.2d 746 (1996) (550-word title summarizing 20-page amendment with seventy-five subsections not invalid on length alone, but this factor plus serious omissions defeated title);Christian Civic Action Committee v. McCuen, supra (709-word title struck down with length as a major factor when viewed in light of other defects); and Dust v. Riviere, supra (727-word title invalid as too lengthy, complex, misleading and confusing).
I must therefore point out that with any proposed act of considerable length and complexity such as yours, the sponsor runs the risk of a challenge and of a finding by the court that a ballot title prepared for the measure would be unacceptable, either because it is too "complex, detailed, and lengthy," or because it has "serious omissions." Crochet,supra.
Additionally, as noted above, the text of some measures "precludes the writing of an acceptable ballot title." See Page, supra. I cannot state whether this is such a measure. That is a matter to be decided by the Arkansas Supreme Court. I would be loath in that instance, in any event, to follow the only option other than certification, presented in Page v.McCuen, supra, of rejecting your submission based upon the substance of the proposed act. This drastic action essentially usurps the right of the initiative under Ark. Const. amend. 7, and should, in my opinion, only be resorted to in the most extreme case.
Pursuant to A.C.A. § 7-9-108, instructions to canvassers and signers must precede every petition, informing them of the privileges granted by the Constitution and of the penalties imposed for violations of this act. Enclosed herewith, over the signature of the Attorney General, are instructions that should be incorporated in your petition prior to circulation.
Sincerely,
MARK PRYOR Attorney General
Enclosure