Oscar Stilley, Attorney at Law Central Mall Plaza, Suite 516 5111 Rogers Avenue Fort Smith, AR 72903-2041
Dear Mr. Stilley:
This is in response to your request for certification, pursuant to A.C.A. § 7-9-107 (Repl. 2000), of the following popular name and ballot title for a proposed amendment to the Arkansas Constitution:
 Popular Name AN AMENDMENT TO ABOLISH ALL AD VALOREM TAXES ON PERSONAL PROPERTY, AUTHORIZE THE CHANGE OF LOCAL TAX RATES, INCLUDING PROPERTY TAX RATES, BY INITIATIVE PETITION, ELIMINATE ALL MINIMUM MILLAGE RATES FOR PROPERTY TAXES, PROVIDE FOR EQUALITY IN DISTRIBUTION OF STATE FUNDS FOR PUBLIC SCHOOLS, PROVIDE FOR SCHOOL CHOICE BY WAY OF EDUCATION VOUCHERS PAYABLE FROM STATE EDUCATION FUNDS, AND FOR OTHER PURPOSES
 Ballot Title AN AMENDMENT TO THE ARKANSAS CONSTITUTION ABOLISHING ALL AD VALOREM TAXES ON PERSONAL PROPERTY, BY THE STATE OF ARKANSAS OR ANY OF ITS POLITICAL SUBDIVISIONS, INCLUDING, BUT NOT LIMITED TO, COUNTY AND MUNICIPAL GOVERNMENT, SCHOOL DISTRICTS, IMPROVEMENT DISTRICTS, FIRE, LIBRARY OR SERVICE DISTRICTS, AFTER DECEMBER 31, 2002, EXCEPT TO THE EXTENT NECESSARY TO PREVENT THE IMPAIRMENT OF BONDED INDEBTEDNESS EXISTING PRIOR TO THE ENACTMENT OF THIS AMENDMENT; PROVIDING THAT THE PEOPLE MAY PROPOSE CHANGES IN ANY LOCAL TAX, INCLUDING BUT NOT LIMITED TO THE MILLAGE RATES IMPOSED BY POLITICAL SUBDIVISIONS OF THE STATE OF ARKANSAS, INCLUDING BUT NOT LIMITED TO COUNTY AND MUNICIPAL GOVERNMENTS, SCHOOL DISTRICTS, IMPROVEMENT DISTRICTS, FIRE, LIBRARY OR SERVICE DISTRICTS, AND ANY OTHER LOCAL TAX IMPOSED BY OR FOR ANY OF THE DESCRIBED ENTITIES, BY THE INITIATIVE PROCESS, IN THE SAME MANNER AS OTHER LOCAL INITIATIVES, UPON THE SIGNATURES OF TEN PERCENT (10%) OF THE VOTERS WITHIN THE TAXING UNIT, CALCULATED AS FOLLOWS: FOR SCHOOL TAXES, TEN PERCENT (10%) OF THE WHOLE NUMBER OF VOTES TABULATED IN THE MOST RECENT SCHOOL ELECTIONS IN THE SCHOOL DISTRICT, UPON THE MILLAGE RATE; FOR CITIES, TEN PERCENT (10%) OF THE PERSONS WHO VOTED FOR MAYOR IN THE MOST RECENT GENERAL ELECTION FOR MAYOR; FOR COUNTY TAXES, TEN PERCENT (10%) OF THE VOTES CAST IN THE MOST RECENT GENERAL ELECTION FOR CIRCUIT CLERK; AS TO ANY OTHER TAXING UNIT, AND AS TO ANY TAXING UNIT IN WHICH THE MOST RECENT MEASURING RACE WAS NOT TABULATED, ON THE SIGNATURES OF THE LESSER OF TEN PERCENT (10%) OF THE WHOLE NUMBER OF VOTERS REGISTERED WITHIN THE TAXING UNIT, OR 100 VOTERS OF THE TAXING UNIT; ESTABLISHING PROCEDURES FOR THE CALLING OF SUCH ELECTIONS; PROVIDING THAT IF MORE THAN ONE RATE OF TAX IS PROPOSED, THE HIGHEST RATE RECEIVING THE AFFIRMATIVE VOTE OF A MAJORITY OF THE VOTES CAST UPON THE QUESTION SHALL BE CERTIFIED AS THE LEGAL RATE; PROVIDING THAT ALL PROPOSED TAX INCREASES OR DECREASES SHALL BE PRESENTED TO THE VOTERS AT REGULARLY SCHEDULED STATEWIDE GENERAL ELECTIONS, AND NOT OTHERWISE, AFTER THE HOLDING OF THE FIRST REGULARLY SCHEDULED STATEWIDE GENERAL ELECTION IN WHICH THE TAX MIGHT BE INCREASED OR DECREASED, SUBSEQUENT TO THE EFFECTIVE DATE OF THIS AMENDMENT; PROVIDING RULES TO PREVENT THE IMPAIRMENT OF THE SECURITY OF BONDHOLDERS IN CASE OF THE REDUCTION OF MILLAGE RATES; PROVIDING THAT WHERE ALL THE PROPERTY TAXES WITHIN A COUNTY ARE ABOLISHED, THE POSITIONS OF TAX ASSESSOR AND TAX COLLECTOR SHALL BE ABOLISHED AS SOON AS PRACTICABLE; ABOLISHING ALL MINIMUM MILLAGE RATES; PROVIDING THAT NEITHER THE STATE NOR ITS SUBDIVISIONS SHALL BE REQUIRED TO MAINTAIN ANY PARTICULAR LEVEL OF EDUCATION FUNDING; PROVIDING THAT STATE FUNDS FOR PRIMARY AND SECONDARY EDUCATION SHALL BE DISTRIBUTED EQUALLY ON A PER PUPIL BASIS, WITH RESPECT TO ALL STUDENTS OF A GIVEN AGE GROUP, UNLESS OTHERWISE REQUIRED BY LAW SUPERIOR TO THIS CONSTITUTION; PROVIDING THAT IF PARENTS ELECT TO ENROLL THEIR CHILDREN IN A PUBLIC SCHOOL OTHER THAN THE SCHOOL THE CHILD WOULD ATTEND BY DEFAULT, THE ALLOCATION AND DISTRIBUTION OF FUNDS FOR REDEMPTION OF VOUCHERS SHALL BE LEFT TO THE DISCRETION OF THE ARKANSAS GENERAL ASSEMBLY AND OTHER STATE AND LOCAL AUTHORITIES; ENTITLING THE STATE TO CONDITION THE REDEMPTION OF SUCH VOUCHERS UPON PROOF OF SATISFACTORY ACADEMIC PERFORMANCE ONLY, AS EVIDENCED BY RESULTS OF TESTS WHICH ARE TO BE SELECTED BY THE PARENTS FROM A STATE APPROVED LIST AND ADMINISTERED BY THE STATE OR A REPUTABLE INDEPENDENT TESTING COMPANY AT THE PARENTS' OPTION; PROVIDING THAT THE STATE MAY DISPENSE WITH SUCH TESTING BASED UPON REASONABLE PROOF OF ADEQUATE INSTRUCTION, SUCH AS ATTENDANCE AT AN ACCREDITED SCHOOL; DECLARING FAILURE TO PAY WITHIN A REASONABLE TIME AFTER SUCH PROOF AN ILLEGAL EXACTION; PROVIDING THAT SUCH VOUCHERS OR CASH REDEMPTIONS ARE NOT TAXABLE INCOME UNDER STATE LAW; PROVIDING THAT THE RIGHT TO ATTEND A PUBLIC SCHOOL OTHER THAN THE SCHOOL ASSIGNED BY DEFAULT SHALL BE CONTINGENT ON AVAILABLE SPACE AND OTHER LEGITIMATE STATE INTERESTS; ALLOWING ANY EDUCATIONAL PROVIDER, PUBLIC OR PRIVATE, TO CONDITION ATTENDANCE UPON COMPLIANCE WITH DISCIPLINARY RULES OR OTHER LEGITIMATE INTERESTS; PROHIBITING STATE REGULATION OF PRIVATE EDUCATIONAL PROVIDERS EXCEPT FOR MINIMALLY RESTRICTIVE LAWS ESSENTIAL FOR HEALTH AND SAFETY OR FRAUD PREVENTION, WHICH DO NOT UNDULY BURDEN PRIVATE EDUCATIONAL PROVIDERS; PROVIDING FOR THE RIGHT TO A JURY TRIAL IN ANY STATE ACTION AGAINST A PRIVATE EDUCATIONAL PROVIDER; PROVIDING THAT ANY NEW STATE LAW REGULATING PRIVATE EDUCATIONAL PROVIDERS SHALL NOT BECOME EFFECTIVE UNLESS IT RECEIVES THE AFFIRMATIVE VOTE OF AT LEAST 3\4 OF THE MEMBERS OF EACH HOUSE OF THE GENERAL ASSEMBLY; PROVIDING THAT THE AMENDMENT SHALL APPLY TO EDUCATION FOR LEGAL ARKANSAS RESIDENTS; AUTHORIZING THE GENERAL ASSEMBLY TO SUPPLEMENT THE VOUCHER RIGHTS CREATED HEREIN; PROVIDING FOR LIBERAL CONSTRUCTION IN FAVOR OF THE TAXPAYER, SEVERABILITY, AND GENERAL REPEALER OF CONFLICTING PROVISIONS; PROVIDING THAT THE AMENDMENT IS SELF-EXECUTING AND SHALL TAKE EFFECT JANUARY 1, 2003, EXCEPT AS OTHERWISE PROVIDED; REQUIRING THE ARKANSAS GENERAL ASSEMBLY TO MAKE ALL OTHER AND FURTHER LAWS AND REGULATIONS NECESSARY TO THE ENFORCEMENT OF THIS CONSTITUTIONAL AMENDMENT, IN FULL COMPLIANCE WITH THE UNITED STATES CONSTITUTION, AND FOR OTHER PURPOSES.
The Attorney General is required, pursuant to A.C.A. § 7-9-107, to certify the popular name and ballot title of all proposed initiative and referendum acts or amendments before the petitions are circulated for signature. The law provides that the Attorney General may substitute and certify a more suitable and correct popular name and ballot title, if he can do so, or if the proposed popular name and ballot title are sufficiently misleading, may reject the entire petition.
A.C.A. § 7-9-107 neither requires nor authorizes this office to make legal determinations concerning the merits of the act or amendment, or concerning the likelihood that it will accomplish its stated objective. Consequently, this review has been limited to a determination, pursuant to the guidelines that have been set forth by the Arkansas Supreme Court, discussed below, of whether the proposed popular name and ballot title accurately and impartially summarize the provisions of your proposed amendment or act.
The purpose of my review and certification is to ensure that the popular name and ballot title honestly, intelligibly, and fairly set forth the purpose of the proposed amendment or act. See Arkansas Women's PoliticalCaucus v. Riviere, 282 Ark. 463, 466, 677 S.W.2d 846 (1984).
The popular name is primarily a useful legislative device. Pafford v.Hall, 217 Ark. 734, 233 S.W.2d 72 (1950). It need not contain detailed information or include exceptions that might be required of a ballot title, but it must not be misleading or give partisan coloring to the merit of the proposal. Chaney v. Bryant, 259 Ark. 294, 532 S.W.2d 741
(1976); Moore v. Hall, 229 Ark. 411, 316 S.W.2d 207 (1958). The popular name is to be considered together with the ballot title in determining the ballot title's sufficiency. Id.
The ballot title must include an impartial summary of the proposed amendment or act that will give the voter a fair understanding of the issues presented. Hoban v. Hall, 229 Ark. 416, 417, 316 S.W.2d 185
(1958); Becker v. Riviere, 270 Ark. 219, 223, 226, 604 S.W.2d 555
(1980). According to the court, if information omitted from the ballot title is an "essential fact which would give the voter serious ground for reflection, it must be disclosed." Bailey v. McCuen, 318 Ark. 277, 285,884 S.W.2d 938 (1994), citing Finn v. McCuen, 303 Ark. 418, 798 S.W.2d 34
(1990); Gaines v. McCuen, 296 Ark. 513, 758 S.W.2d 403 (1988); Hoban v.Hall, supra; and Walton v. McDonald, 192 Ark. 1155, 97 S.W.2d 81 (1936). At the same time, however, a ballot title must be brief and concise (see
A.C.A. § 7-9-107(b)); otherwise voters could run afoul of A.C.A. §7-5-522's five-minute limit in voting booths when other voters are waiting in line. Bailey v. McCuen, supra. The ballot title is not required to be perfect, nor is it reasonable to expect the title to cover or anticipate every possible legal argument the proposed measure might evoke. Plugge v. McCuen, 310 Ark. 654, 841 S.W.2d 139 (1992). The title, however, must be free from any misleading tendency, whether by amplification, omission, or fallacy; it must not be tinged with partisan coloring. Id. A ballot title must convey an intelligible idea of the scope and significance of a proposed change in the law. Christian CivicAction Committee v. McCuen, 318 Ark. 241, 884 S.W.2d 605 (1994). It has been stated that the ballot title must be: 1) intelligible, 2) honest, and 3) impartial. Becker v. McCuen, 303 Ark. 482, 798 S.W.2d 71 (1990), citing Leigh v. Hall, 232 Ark. 558, 339 S.W.2d 104 (1960).
Having analyzed your proposed amendment, as well as your proposed popular name and ballot title under the above precepts, it is my conclusion that I must reject your proposed popular name and ballot title due to ambiguities in the text of your proposed measure. A number of additions or changes to your popular name and ballot title are, in my view, necessary in order to more fully and correctly summarize your proposal. I cannot, however, at this time, fairly or completely summarize the effect of your proposed measure to the electorate in a popular name or ballot title without the resolution of the ambiguities. I am therefore unable to substitute and certify a more suitable and correct ballot title pursuant to A.C.A. § 7-9-107(b).
Before addressing the specific ambiguities in the text of your proposed amendment, I will note for your guidance that I am troubled by the length of your proposed ballot title, which comprises 840 words. As I advised you in Ark. Op. Att'y Gen. Nos. 99-263 and 2001-211 with respect to other proposed amendments:
 The longest title approved by the Arkansas Supreme Court contained 900 words. Bailey v. Hall, Secretary of State, 198 Ark. 815, 131 S.W.2d 635
(1939). There were no serious omissions or fallacious statements in that ballot title, which summarized a referendum on a workers' compensation law passed by the General Assembly. In the years after the Bailey decision, however, the court has struck down titles of lesser length, when accompanied by any omissions or misleading tendencies. See, e.g., Crocket v. Priest, supra (1,000 word title struck down); Scott v. Priest, 326 Ark. 328, 932 S.W.2d 746 (1996) (550 word title not invalid on length alone, but this factor plus serious omissions defeated title); Christian Civic Action Committee v. McCuen, supra (709 word title struck down with length as a major factor when viewed in light of other defects); and Dust v. Riviere, supra (727 word title invalid as too lengthy, complex, misleading and confusing). See also, Hoban v. Hall, Secretary of State, 229 Ark. 416, 316 S.W.2d 185 (1958) (text of proposed measure itself was of such extreme length and touched upon so many different subjects that ballot title did not sufficiently cover its provisions); and Newton v. Hall, Secretary of State, supra
(735 word title upheld, but noted length as a potential problem).
As an addendum to this discussion, it should be noted that the Arkansas Supreme Court approved a ballot title comprised of 994 words in Walkerv. Priest, 342 Ark. 410, 29 S.W.3d 657 (2000). The court stated, however, that the ballot title in that case "staked out the outer limits for length and complexity" of ballot titles. In my opinion, the court might well reject your proposed your ballot title based on its length, considered together with its complexity, the number of issues it addresses and the internal inconsistencies discussed immediately below.
I appreciate that the length of your ballot title in part reflects the complexity of your proposed amendment, which addresses a variety of issues. As I have done before, I must warn you of the particular hazards attendant to the ballot title of a lengthy and complex proposal such as yours. The ballot title for such a measure must avoid both the danger of being too lengthy and the danger of having serious omissions. More specifically, the title cannot be so lengthy as to cause voters to violate the voting booth time limitations, yet it must not omit any of the proposed measure's important factors. For this reason, I must point out that with any proposed amendment of considerable length and complexity such as yours, the sponsor runs the risk of a challenge and of a finding by the court that the ballot title is unacceptable, either because it is too "complex, detailed, and lengthy," or because it has "serious omissions." See, e.g., Page v. McCuen, 318 Ark. 342, 884 S.W.2d 951
(1994). See also, Walker v. Priest, 342 Ark. 410, 29 S.W.3d 657 (2000). This concern may be increased where the measure covers more than one subject matter area. See e.g., Walker v. Priest, supra, (upholding the "CHART" tobacco settlement act ballot title, but stating that ". . . here again, as was the case in Newton, [Newton v. Hall, 196 Ark. 929,120 S.W.2d 364 (1938)] `we have an amendment which deals only with [a] single question,' Newton, 196 Ark. at 948, which helps confirm our confidence in our voters' ability to understand this ballot title.")
In my opinion, the numerous ambiguities in the text of your proposed amendment may be a function of its complexity. Among these ambiguities are the following:
 Section 1. As an initial matter, your inclusion of "improvement districts" and "assessments" in Section 1 is confusing. That Section prohibits the imposition of taxes or assessments on personal property except to the extent necessary to prevent impairment of bonded indebtedness. Most "improvement districts" do not levy "assessments" against personal property. See generally, A.C.A. §§ 14-86-101 to — 14-184-216. See also e.g., Op. Att'y. Gen. 96-173 (opining that a quorum court is without authority to levy against personal property in an ambulance service improvement district). The use of the words" fire, library or service districts" is also somewhat vague. I am uncertain, therefore, as to the exact effect of your amendment in this regard.
 Additionally, the term "personal property" is not defined for purposes of your amendment. Neither does your amendment indicate who will make the determination as to the necessity to continue ad valorem levies against personal property, or how the levy will be restricted "to the extent" necessary to prevent impairment of bonded indebtedness. If these issues will be matters for determination by the General Assembly, your proposed amendment should so state. Although Section 7 of your proposed amendment requires the General Assembly and all state or local rule-making authorities to make laws and regulations "necessary" to the enforcement of your amendment, I am uncertain as to the exact responsibility for determining these matters.
 Your amendment does not indicate any other basis, other than to prevent the impairment of bonded indebtedness, on which the levy against personal property may be continued. Constitutional issues with regard to the impairment of contractual obligations may arise outside the context of bonded indebtedness. For example, you amendment would presumably abolish personal property taxes levied to support police and firefighters' retirement benefits under Amendment 31 to the Arkansas Constitution. Contractual issues may arise with regard to such levies.
 Section 2. Section 2(a) of your proposed amendment authorizes the people to "propose changes in any local tax . . . including but not limited to . . . improvement districts, fire, library or service districts." The use of the word "tax" and" taxing units" in this Section is confusing with reference to "improvement districts," which levy "assessments" and not "taxes." See e.g., Rainwater v. Haynes, 244 Ark. 1191, 428 S.W.2d 254 (1968).
 Section 2 of your amendment allows the people to propose changes in local taxes by the initiative process, but does not indicate how this procedure coincides with the procedures under Amendment 7 to the Arkansas Constitution. The signature percentages required in your amendment differ from those outlined in Amendment 7. Your proposed ballot title, however, states that this right is to be exercised" in the same manner as other local initiatives." I am therefore uncertain as to your intention in this regard.
 Section 2 of your proposal authorizes the people to propose" changes" in any local tax. I am uncertain whether this language authorizes the people to initiate new taxes.
 The exercise of initiative rights in improvement districts is unclear. As an initial matter, the reference to such entities as "taxing units" is confusing. See Rainwater, supra. Additionally, the calculation of the lesser of ten percent of the whole number of registered voters in the "taxing unit" or one-hundred voters of the taxing unit raises questions in the case of improvement districts. Typically real property owners are the only affected individuals for purposes of improvement district assessments. It may be your intention to shift decision-making from the real property owners of such a district to the voting population of the district at large with regard to assessment levels. I am uncertain as to the effect of your measure on this point, however.
 Section 2(a) and (b) of your measure refer to "regularly scheduled statewide general elections" at which taxing entities may submit the question of changes in local tax rates. I assume these references require only the voters of the local taxing entity to approve the change, although your amendment is unclear as to whether the voters of the entire state must pass upon such a local measure.
 The last sentence of Section 2(a) of your measure states that no local taxing entity may "impose" or increase any local tax except upon approved of the voters. An ambiguity exists as to whether this language would prohibit a taxing entity from "imposing" a pre-existing tax after the effective date of your amendment, if not approved by the voters.
 The proposed ballot title for your measure states that: "if more than one rate of tax is proposed, the highest rate receiving the affirmative vote of a majority of the votes cast upon the question shall be certified as the legal rate." This provision appears nowhere in the text of your proposed measure.
 I am uncertain altogether as to the effect of Section 2(b) of your proposal, which states: "Notwithstanding the provisions of subsection (a), all proposed increases or decreases of local tax rates shall be presented to the voters at regularly scheduled statewide general elections, and not otherwise, after the holding of the first regularly scheduled statewide general election in which the tax might be increased or decreased, subsequent to the effective date of this amendment."
 Section 2(c) of your amendment states that nothing in the amendment shall be construed to permit impairment of security of holders of bonds lawfully secured by sales taxes or ad valorem property taxes. I am uncertain as to the construction of this provision with regard to improvement districts, which levy "assessments" rather than ad valorem "taxes" or sales taxes. May the security of bondholders of such districts be impaired?
 Section 3. Section 3 of your amendment is unclear in requiring the State to distribute funds for primary and secondary education "equally on a per pupil basis, with respect to all students of a given age group. . . ." I am uncertain as to the meaning of "a given age group." For example, is this requirement met by the equal distribution of state funds for all seven year-olds, eight year-olds, etc., regardless of what grade level these children attend?
 Section 4. Section 4 of your amendment authorizes parents to select any educational provider they choose for their child and requires, if the parents choose other than a public school, that the state provide the parents a voucher redeemable for cash. The section conditions the right to attend another public school, however, on available space and other legitimate state interests. Your amendment does not indicate who is to make this determination. Additionally, your proposed ballot title states that if parents elect to enroll their children in a public school other than the one the child would normally attend, "the allocation and distribution of funds for redemption of vouchers shall be left to the discretion of the Arkansas General Assembly and other state and local authorities. . . ." This language does not appear in the text of your measure and I am uncertain as to your intention. This language also raises other unanswered questions as to the entity responsible for redemption of the vouchers "for cash," and in fact the amount of such vouchers or who is to determine such amount.
 Section 6. The language of Section 6 is vague in several respects. For example, your amendment states that the State may not enforce any laws or regulations against any private educational provider, except those essential for the preservation of public health and safety, or the prevention of fraud. This language is extremely broad and could conceivably encompass every type of law, from criminal laws to laws governing generally applicable taxation. It is therefore difficult to summarize the impact of this language in a ballot title.
 Section 7. Section 7 of your amendment is confusing in purporting to make your amendment "self-executing" "to the extent possible" and also requiring the General Assembly and all other state or local rule-making authorities to make necessary laws and regulations to enforce the amendment. The exact delineation of the power of the General Assembly with regard to the provisions of your amendment is a recurring issue throughout your text and leads to numerous ambiguities.
My office, in the certification of ballot titles and popular names, does not concern itself with the merits, philosophy, or ideology of proposed measures. I have no constitutional role in the shaping or drafting of such measures. My statutory mandate is embodied only in A.C.A. § 7-9-107
and my duty is to the electorate. I am not your counsel in this matter and cannot advise you as to the substance of your proposal.
At the same time, however, the Arkansas Supreme Court, through its decisions, has placed a practical duty on the Attorney General, in exercising his statutory duty, to include language in a ballot title about the effects of a proposed measure on current law. See, e.g., Finnv. McCuen, 303 Ark. 418, 793 S.W.2d 34 (1990). Furthermore, the Court has recently confirmed that a proposed amendment cannot be approved if "[t]he text of the proposed amendment itself contribute[s] to the confusion and disconnect between the language in the popular name and the ballot title and the language in the proposed measure." Roberts v. Priest,341 Ark. 813, 20 S.W.3d 376 (2000). The Court concluded: "[I]nternal inconsistencies would inevitably lead to confusion in drafting a popular name and ballot title and to confusion in the ballot title itself." Id.
Where the effects of a proposed measure on current law are unclear or ambiguous, it is impossible for me to perform my statutory duty to the satisfaction of the Arkansas Supreme Court without clarification of the ambiguities.
My statutory duty, under these circumstances, is to reject your proposed ballot title, stating my reasons therefor, and to instruct you to "redesign" the proposed measure and ballot title. See A.C.A. §7-9-107(c). You may, after clarification of the matter discussed above, resubmit your proposed amendment, along with a proposed popular name and ballot title, at your convenience. I anticipate, as noted above, that some changes or additions to your submitted ballot title may be necessary. I will be pleased to perform my statutory duties in this regard in a timely manner after resubmission.
Sincerely,
MARK PRYOR Attorney General
MP/cyh