Mr. Barry L. Emigh 1104 7th Street Hot Springs, AR 71913-4225
Dear Mr. Emigh:
You have requested certification, pursuant to A.C.A. § 7-9-107, of a popular name and ballot title for a proposed constitutional amendment. You have previously submitted various similar measures, some of which this office rejected due to ambiguities in the text of your proposed amendments. See Ops. Att'y Gen. Nos. 2003-008, 2002-346, 2002-335, 2002-325, 2002-308, 2002-293, 2002-272, 2002-262, 2002-242, 2002-227, 2002-208, 2002-118, 2002-102, 2002-077, 2002-042, 2002-026, 2002-001, 2001-380, 2001-358, 2001-341, 2001-173, 2001-110, 2001-095 and 2001-074. This office has revised and certified popular names and ballot titles for three similar measures, as evidenced by Ops. Att'y Gen. Nos. 2002-140; 2001-196; and 2001-129. You have since made additional changes to your measure and have submitted a revised popular name and ballot title for my certification. Your proposed popular name and ballot title state:
 Popular Name AN AMENDMENT AUTHORIZING BINGO AND RAFFLES BY NON PROFIT ORGANIZATIONS INCORPORATED IN THE STATE, AUTHORIZING BARRY LEE EMIGH AND HAROLD GLEN MARTIN OR THEIR TRANSFEREES TO OPERATE GAMBLING, EMPOWERING THE GENERAL ASSEMBLY TO OPERATE LOTTERIES, TO PASS LAWS, TAXES AND APPROPRIATIONS WITHOUT SESSION OR ASSEMBLY AND FURTHER EXTENDING THE POWER OF A REFERENDUM VOTE BY THE PEOPLE
 Ballot Title AN AMENDMENT TO THE ARKANSAS CONSTITUTION AUTHORIZING NON PROFIT ORGANIZATIONS INCORPORATED IN THE STATE TO OPERATE BINGO AND RAFFLES; EMPOWERING THE GENERAL ASSEMBLY TO FACILITATE THE STATE'S OPERATION OF A LOTTERY OR LOTTERIES WITH THE STATE-WIDE SALE OF LOTTERY TICKETS TO INCLUDE THE STATE'S OPERATION OF SUCH LOTTERIES IN COOPERATION WITH LOTTERIES OPERATED BY AND IN COMBINATION BY OTHER STATES WHICH SIGNIFICANTLY CHANGES CURRENT LAWS UNDER ARKANSAS CONSTITUTION ARTICLE 19 SECTION 14 AFFECTING GAMBLING; AUTHORIZING BARRY LEE EMIGH TO OPERATE, EMPLOY AND SUBCONTRACT ANY INDEPENDENT CONTRACTOR(S) TO OPERATE GAMBLING ON ANY DAY FOR THE WHOLE OF A TWENTY-FOUR HOUR DAY WITHIN ONE STRUCTURE WITHIN EACH OF THE FOLLOWING COUNTIES OF BENTON, CRAWFORD, CRITTENDEN, GARLAND, MILLER, MISSISSIPPI AND PULASKI WITH SUCH STRUCTURE LOCATED WITHIN ANY CITY AND TOWN WITHIN THOSE COUNTIES WITH THE OPERATION OF GAMBLING WITHIN EACH COUNTY A SEPARATE GAMBLING OPERATION; AUTHORIZING HAROLD GLEN MARTIN TO OPERATE, EMPLOY AND SUBCONTRACT ANY INDEPENDENT CONTRACTOR(S) TO OPERATE GAMBLING ON ANY DAY FOR THE WHOLE OF A TWENTY-FOUR HOUR DAY WITHIN ONE STRUCTURE WITHIN EACH OF THE FOLLOWING COUNTIES OF BAXTER, CAROLL, CHICOT, JEFFERSON, MILLER, OUACHITA, PULASKI AND SEBASTIAN WITH SUCH STRUCTURE LOCATED WITHIN ANY CITY AND TOWN WITHIN THOSE COUNTIES WITH THE OPERATION OF GAMBLING WITHIN EACH COUNTY A SEPARATE GAMBLING OPERATION; AUTHORIZING THE GAMBLING OPERATORS(S), THOSE EMPLOYED AND SUBCONTRACTED TO OPERATE GAMBLING AS INDEPENDENT CONTRACTORS TO SELL AND SERVE COMPLIMENTARY ALCOHOLIC BEVERAGES ON ANY DAY FOR THE WHOLE OF A TWENTY-FOUR HOUR DAY WITHIN THE INTERIOR AREA OF THOSE STRUCTURES USED FOR GAMBLING (INCLUDING THOSE COUNTIES, CITIES AND TOWNS IN WHICH THE SALE OF ALCOHOLIC BEVERAGES IS OTHERWISE PROHIBITED); EXEMPTING THE TRANSFER OF EACH GAMBLING OPERATION FROM APPROVAL, TAX OR FEE BY THE STATE, COUNTIES, CITIES TOWNS, AND AGENCIES THEREOF; REQUIRING THE GAMBLING OPERATOR(S) ESTABLISH AND DEPOSIT 34% OF THE "PROFIT" FROM EACH GAMBLING OPERATION IN AN INTEREST EARNING ACCOUNT WITH ANY AMOUNT FROM THAT ACCOUNT DISTRIBUTED AT ANY TIME IN VARIOUS AMOUNTS TO ANY NON-PROFIT ORGANIZATIONS AND GOVERNMENT PROGRAMS OF THE GAMBLING OPERATOR'S CHOICE; EMPOWERING THE GENERAL ASSEMBLY UNLESS PROVIDED DIFFERENTLY TO REGULATE BINGO, RAFFLES, GAMBLING AND THE SALE AND SERVICE OF ALCOHOLIC BEVERAGES IN CONNECTION WITH GAMBLING; REQUIRING THE GAMBLING OPERATOR(S) PAY 11% OF THE "PROFIT" TO THE STATE'S GENERAL FUND FROM EACH GAMBLING OPERATION, 11% OF THE "PROFIT" TO THE COUNTY'S GENERAL FUND IN WHICH GAMBLING IS OPERATED AND 11% OF THE "PROFIT" TO A CITY OR TOWN'S GENERAL FUND IN WHICH GAMBLING IS OPERATED; PROHIBITING THE STATE, COUNTIES, CITIES, TOWNS, AND AGENCIES THEREOF, UNLESS PROVIDED DIFFERENTLY FROM TAXING THE GAMBLING EQUIPMENT, REVENUES DERIVED FROM BINGO, RAFFLES, GAMBLING AND ALCOHOLIC BEVERAGES SOLD IN CONNECTION WITH GAMBLING; PROHIBITING THE STATE, COUNTIES, CITIES, TOWNS, AND AGENCIES THEREOF, FROM REQUIRING ANY LICENSE, FEE OR PERMIT TO OPERATE BINGO, RAFFLES, GAMBLING AND TO SELL AND SERVE ALCOHOLIC BEVERAGES IN CONNECTION WITH GAMBLING TO INCLUDE THE TRANSPORT AND USE OF EQUIPMENT USED TO OPERATE BINGO, RAFFLES AND GAMBLING; PROVIDING FOR THE SHIPMENT OF GAMBLING DEVICES; EMPOWERING THE GENERAL ASSEMBLY BY PETITION WITH 3/5 OF EACH HOUSE AND THE GOVERNOR'S SIGNATURE OR 3/4 OF EACH HOUSE WITHOUT THE GOVERNOR'S SIGNATURE TO PASS ANY LAW, RULE, REGULATION, TAX AND APPROPRIATION WITHOUT SESSION OR ASSEMBLY WHICH SIGNIFICANTLY CHANGES CURRENT LAWS EFFECTING THE "CHECKS AND BALANCES" OF GOVERNMENTAL POWERS AND AUTHORITY OF THE GOVERNOR; AMENDING ARK. CONST. AMENDMENT 7 TO INCLUDE A REFERENDUM VOTE ON ANY LAW, RULE, REGULATION, TAX AND APPROPRIATION PASSED BY THE GENERAL ASSEMBLY BY PETITION WITHOUT SESSION OR ASSEMBLY; DEFINING "BINGO" AS THE RISKING OF MONEY ON A GAME PLAYED WITH NUMBERED CARDS CORRESPONDING TO NUMBERED BALLS DRAWN AT RANDOM TO WIN A PRIZE OR MONEY; DEFINING "RAFFLE" AS THE RISKING OF MONEY FOR THE DISTRIBUTION OF A PRIZE AMONG PERSONS WHO HAVE PAID FOR A CHANCE TO OBTAIN A PRIZE BUT SHALL EXCLUDE MONEY AS A PRIZE; DEFINING" LOTTERY" AS THE TYPICAL FORM OF A LOTTERY CHARACTERIZED BY THE ARKANSAS SUPREME COURT WHICH INVOLVES THE SALE OF A LARGE NUMBER OF CHANCES RELATIVE TO THE SELECTION OF A SMALL NUMBER OF WINNERS BY A DRAWING DETERMINED BY CHANCE ALONE; DEFINING "GAMBLING" AS THE RISKING OF MONEY BETWEEN PERSONS WHERE ONE IS LOSER AND OTHER GAINER WITH GAMES OF CHANCE, SKILL AND ANY COMBINATION THEREOF WHICH THE GENERAL ASSEMBLY SHALL REGULATE, BUT FOR THE PURPOSE OF THIS DEFINITION SHALL EXCLUDE THE OPERATION OF A LOTTERY, BINGO AND RAFFLES; DEFINING "STRUCTURE" AS ANY KIND AND SIZE OF BUILDING WITH ANY ATTACHED ADDITIONS CONSIDERED A SINGLE STRUCTURE TO INCLUDE ANY KIND AND SIZE OF ANCHORED WATER VESSEL WITH ANY ATTACHED ADDITIONS TO THAT WATER VESSEL CONSIDERED A SINGLE STRUCTURE; DEFINING" GAMBLING OPERATION" AS THE AUTHORITY OF THE GAMBLING OPERATOR TO OPERATE GAMBLING, EMPLOY AND SUBCONTRACT ANY INDEPENDENT CONTRACTOR(S) TO OPERATE GAMBLING WITH THE SALE AND COMPLIMENTARY SERVICE OF ALCOHOLIC BEVERAGES; DEFINING "GAMBLING OPERATOR" AS BARRY LEE EMIGH AND HAROLD GLEN MARTIN OR THOSE PERSONS, COMPANIES OR CORPORATIONS TO WHICH THE GAMBLING OPERATION IS TRANSFERRED; DEFINING" PROFIT" AS THE AMOUNT OF MONEY AFTER DEDUCTING TAXES, FEES AND OPERATIONAL COSTS FROM THE GROSS EARNINGS WHICH IS THE TOTAL AMOUNT OF MONEY EARNED AFTER DEDUCTING THE MONEY PAID AS A LOSS TO THOSE AS WINNERS; REQUIRING THE GENERAL ASSEMBLY TO MAKE ALL OTHER AND FURTHER LAWS, RULES AND REGULATIONS TO THE ENFORCEMENT OF THIS CONSTITUTIONAL AMENDMENT; MAKING THE PROVISIONS OF THIS AMENDMENT SEVERABLE; AND REPEALING ALL LAWS AND CONSTITUTIONAL AMENDMENTS IN CONFLICT WITH THIS AMENDMENT
The Attorney General is required, pursuant to A.C.A. § 7-9-107, to certify the popular name and ballot title of all proposed initiative and referendum acts or amendments before the petitions are circulated for signature. The law provides that the Attorney General may substitute and certify a more suitable and correct popular name and ballot title, if he can do so, or if the proposed popular name and ballot title are sufficiently misleading, may reject the entire petition.
A.C.A. § 7-9-107 neither requires nor authorizes this office to make legal determinations concerning the merits of the act or amendment, or concerning the likelihood that it will accomplish its stated objective. Consequently, this review has been limited to a determination, pursuant to the guidelines that have been set forth by the Arkansas Supreme Court, discussed below, of whether the proposed popular name and ballot title accurately and impartially summarize the provisions of your proposed amendment or act.
The purpose of my review and certification is to ensure that the popular name and ballot title honestly, intelligibly, and fairly set forth the purpose of the proposed amendment or act. See Arkansas Women's PoliticalCaucus v. Riviere, 282 Ark. 463, 466, 677 S.W.2d 846 (1984).
The popular name is primarily a useful legislative device. Pafford v.Hall, 217 Ark. 734, 233 S.W.2d 72 (1950). It need not contain detailed information or include exceptions that might be required of a ballot title, but it must not be misleading or give partisan coloring to the merit of the proposal. Chaney v. Bryant, 259 Ark. 294, 532 S.W.2d 741
(1976); Moore v. Hall, 229 Ark. 411, 316 S.W.2d 207 (1958). The popular name is to be considered together with the ballot title in determining the ballot title's sufficiency. Id.
The ballot title must include an impartial summary of the proposed amendment or act that will give the voter a fair understanding of the issues presented. Hoban v. Hall, 229 Ark. 416, 417, 316 S.W.2d 185
(1958); Becker v. Riviere, 270 Ark. 219, 223, 226, 604 S.W.2d 555
(1980). According to the court, if information omitted from the ballot title is an "essential fact which would give the voter serious ground for reflection, it must be disclosed." Bailey v. McCuen, 318 Ark. 277, 285,884 S.W.2d 938 (1994), citing Finn v. McCuen, 303 Ark. 418, 798 S.W.2d 34
(1990); Gaines v. McCuen, 296 Ark. 513, 758 S.W.2d 403 (1988); Hoban v.Hall, supra; and Walton v. McDonald, 192 Ark. 1155, 97 S.W.2d 81 (1936). At the same time, however, a ballot title must be brief and concise (see
A.C.A. § 7-9-107(b)); otherwise voters could run afoul of A.C.A. §7-5-522's five-minute limit in voting booths when other voters are waiting in line. Bailey v. McCuen, supra. The ballot title is not required to be perfect, nor is it reasonable to expect the title to cover or anticipate every possible legal argument the proposed measure might evoke. Plugge v. McCuen, 310 Ark. 654, 841 S.W.2d 139 (1992). The title, however, must be free from any misleading tendency, whether by amplification, omission, or fallacy; it must not be tinged with partisan coloring. Id. A ballot title must convey an intelligible idea of the scope and significance of a proposed change in the law. Christian CivicAction Committee v. McCuen, 318 Ark. 241, 884 S.W.2d 605 (1994). It has been stated that the ballot title must be: 1) intelligible, 2) honest, and 3) impartial. Becker v. McCuen, 303 Ark. 482, 798 S.W.2d 71 (1990), citing Leigh v. Hall, 232 Ark. 558, 339 S.W.2d 104 (1960).
Having analyzed your proposed amendment, as well as your proposed popular name and ballot title under the above precepts, it is my conclusion that I must reject your proposed popular name and ballot title due to remaining ambiguities in the text of your proposed measure. I must also reiterate that in my opinion, the scope and import of this proposal cannot adequately be conveyed to the voter in an acceptable ballot title. I cannot at this time fairly or completely summarize the effect of your proposed measure to the electorate in a popular name or ballot title without the resolution of these matters. I am therefore unable to substitute and certify a more suitable and correct popular name or ballot title pursuant to A.C.A. § 7-9-107(b).
I refer to the following matters:
 • Section 4 requires that a set percentage of the gambling profit be deposited annually into a "bank account or trust" established for each gambling operation. It provides further that "any amount in the account . . . can at any time be distributed by the gambling operator" to any non-profit organization or for government programs. The section states that the gambling operation has "sole discretion" regarding distributions from the account. Although the implication is that the funds in the bank or trust account can only be used for payments to non-profits and for government programs, this is not entirely clear. Nor is it clear that the funds must be used for these purposes. The mere fact that a "trust" may be established provides no clear guidance regarding the use of the funds, in the absence of information concerning the terms thereof or the trustee. Consequently, this section is ambiguous. It could give the voter the impression that the funds will in fact be distributed for the identified purposes, whereas upon closer inspection this may not actually be the case. In any event, this is uncertain and the ballot title is insufficient as a result.
 • A related ambiguity arises under subsection 5 of Section 3 regarding the gambling profit. This subsection states that "the `profit' from each gambling operation (less any payment [under sections 4 and 5]) shall be paid to the gambling operator of that gambling operation." This wording is troublesome. The concept of the gambling operator being "paid" the profit is not reflected or clarified elsewhere in the amendment. I am unable to determine the meaning of this language.
 • You have included the broad and far-reaching lawmaking provisions of Section 7, despite my previous admonitions in this regard. See Op. Att'y Gen. 2003-008 and 2002-346. Upon further review, I must advise that your choice or insistence in covering this divergent topic precludes the writing of an acceptable ballot title. Our court has consistently warned that the ballot title must "convey the scope and import of the measure," and it must also "impart a description of the proposal so voters can cast their votes intelligently and with a fair understanding on the issue." Page v. McCuen, 318 Ark. 342, 347, 884 S.W.2d 951 (1994). As I have previously noted, the issues presented by Section 7 are unrelated to the other gambling-related provisions, which in themselves are far-reaching and fairly complex. Although in submitting your proposal you have expressed your belief that Section 7 is important to provide for the successful operation of a state lottery and to regulate gambling and distribute gambling revenues (see submission dated Jan. 27, 2003), as drafted Section 7 extends far beyond these concerns. And as a result, even when summarized accurately or verbatim, the true contents of Section 7 cannot, in my view, be sufficiently conveyed to the voter in a ballot title for this proposed amendment
My office, in the certification of ballot titles and popular names, does not concern itself with the merits, philosophy, or ideology of proposed measures. I have no constitutional role in the shaping or drafting of such measures. My statutory mandate is embodied only in A.C.A. § 7-9-107
and my duty is to the electorate. I am not your counsel in this matter and cannot advise you as to the substance of your proposal.
At the same time, however, the Arkansas Supreme Court, through its decisions, has placed a practical duty on the Attorney General, in exercising his statutory duty, to include language in a ballot title about the effects of a proposed measure on current law. See, e.g., Finnv. McCuen, 303 Ark. 418, 793 S.W.2d 34 (1990). Furthermore, the Court has recently confirmed that a proposed amendment cannot be approved if "[t]he text of the proposed amendment itself contribute[s] to the confusion and disconnect between the language in the popular name and the ballot title and the language in the proposed measure." Roberts v. Priest,341 Ark. 813, 20 S.W.3d 376 (2000). Where the effects of a proposed measure on current law are unclear or ambiguous or cannot be adequately conveyed in an acceptable ballot title, it is impossible for me to perform my statutory duty to the satisfaction of the Arkansas Supreme Court.
My statutory duty, under these circumstances, is to reject your proposed ballot title, stating my reasons therefor, and to instruct you to "redesign" the proposed measure and ballot title. See A.C.A. §7-9-107(c). You may, after clarification of the matters discussed above, resubmit your proposed amendment, along with a proposed popular name and ballot title, at your convenience. I anticipate, as noted above, that some changes or additions to your submitted ballot title may be necessary. This Office will be pleased to perform its statutory duties in this regard in a timely manner after resubmission.
Sincerely,
MIKE BEEBE Attorney General